J. W. HUTCHINS v. TOWN OF DURHAM.

*Laws Taken to be Incorporated into Contracts—Licensees Distinguished from Tenants — Occupants of Market Stalls—Implied Powers of Cities and Towns over Markets—Rights and Duties of Passengers, Hotel Guests, Theatre Goers, &c., Their Liability to Summary Eviction, and Their Remedies.*

1. Laws in existence at the date of a contract are deemed to constitute a part of the same, just as though incorporated in it.

2. A town ordinance, providing that all licenses to occupy stalls in a market house may be revoked at will, is in force until repealed, and may be summarily enforced at the discretion of the authorities of the town.

3. Persons occupying stalls in a town market house, under license from the town, are not tenants but licensees merely.   They do not acquire the rights of tenants from year to year by being permitted to hold over after the period covered by their license has expired, and may be summarily ejected at the discretion of the proper authorities.

4. Guests at a hotel, passengers on a car, holders of seats at a theatre, occupants of stalls in a town market house, and such like licenses, cannot maintain ejectment if evicted, but can only sue for damages if wrongfully turned out. Such persons' rights of occupancy are dependent upon proper behavior and decent conduct and obedience to reasonable rules and regulations of the proprietors, and for a breach of such implied conditions they may be summarily removed.

5. Markets being a public necessity, a town has the implied power to establish and regulate them.

CIVIL ACTION, brought by plaintiff to recover damages for being violently evicted from a meat stall in the market house of defendant Town of Durham by its officers under the orders of its governing authorities. The case was tried before *Starbuck, Judge*, at October Term, 1895, of DURHAM Superior Court.

The plaintiffs alleged.

II. That the town of Durham owns a market house in said town and rents the stalls to various persons for various purposes, and while acting in its ministerial and corporate character, managed and maintained the said market house and the stalls therein, for its own benefit and profits, for at least eight or ten years before and at the time of the acts hereinafter complained of.

IV. That Section Three of Chapter Ten of the ordinances of the town of Durham, provides as follows : " The clerk of the market under the supervision of the committee on markets, shall annually, in the last week of April in each year, rent out publicly the fish and meat stalls and vegetable benches or stands in the market house for one year from the first day of May ensuing, giving due notice of the time of renting by posters in the market house.

" All renters shall pay monthly. in advance, their respective rents to the tax collector of the town, and it shall be the duty of the clerk of the market to have vacated any

stall or bench when the occupant fails to comply with the provisions of this section, but no person shall occupy a meat stall or bench at the market until he obtain a license from the Board of Commissioners, first having satisfied the board as to his character and capacity; and such license may be revoked at the pleasure of the board for a violation of any of the criminal laws of the State, or of the ordinances of the town, or for any other cause which the board may deem sufficient."

V. That by virtue of the public renting of said stalls as mentioned in said section, the plaintiff on or about the last week in April, 1887, rented Stall No. 2 at the price of thirteen dollars per month, which was the last annual renting under said action, and received a license as directed by said section, and became a tenant of said town, and subsequently, to-wit: on or about the first day of April, 1894, purchased the business of one M. Oppenheimer, who was occupying Stall No. 3, with the assent of the town; and with the assent of the governing authorities of said town, this plaintiff took possession of said stall, and continued to occupy said stalls and pay rent for the same to the town as required by said section.

VI. That for several years prior to August 10, 1894, there had been no annual public renting as prescribed by said ordinances, but plaintiff continued, with the consent of said town, to occupy said stall and to hold over from year to year until the 10th day of August, 1894, without having his license revoked, and all the while paying the rent to said town.

VII. That at a regular meeting of the Board of Commissioners of said town, held July 3, 1894, on motion of Commissioner Jordan, the clerk of the market was directed to advertise that on the first day of August, 1894, at 10 o'clock a. m., he will rent the fish and meat stalls and

vegetable benches or stands at the town market house, for the remainder of the year ending April 30, 1895, as there was no annual renting on the last week of April, 1894, as required by the Town Ordinance, Chapter 10, Section 3.

That in pursuance of said resolution the following notice was issued, to-wit:

" NOTICE! By order of the Board of Commissioners of the Town of Durham, at their regular session for the month of July, 1894, directing that since there was no annual renting of the fish and meat stalls and vegetable benches or stands at the town market house in the last week in April, 1894, as required by the Town Ordinances, Chapter 10, Section 3, the said stalls and benches or stands should be rented at public auction on August 1, 1894, for the remainder of the year ending April 30, 1895, I will on August 1, 1894, at 10 o'clock a. m., offer at the town market house, the said stalls and benches or stands in the town market house, at public auction, for the remainder of the year ending April 30, 1895.

" J. T. GIDDENS, Market Clerk."

Durham, N. C., July 10, 1894.

Town Ordinance Chapter 10, Section 3 : " No person shall occupy a meat stall or bench at the market house until he obtains a license from the Board of Commissioners, first having satisfied the board as to his character and capacity." At the time and place mentioned in said notice there was a pretended renting of said stalls Nos. 2 and 3, before which, and early on the morning of August 1, 1894, this plaintiff tendered the sum of $24 dollars, the rent of said stalls, as he had heretofore done, and demanded receipt as heretofore given by said town, but which the said town refused to accept; and against the protest of this plaintiff, Stall No. 2 was bid off by J. W.

Jones at $24 per month, and Stall No. 3 was bid off by C. M. Herndon at $26 dollars per month, this plaintiff giving notice that he was entitled to the possession of said stalls until April 30, 1895.

VIII. At a regular meeting of the Board of Commis. sioners of the town of Durham, held August 7, 1894, on motion of Commissioner Walker, it was ordered that all parties to whom market stalls were rented on August 1, 1894, be granted license to conduct business at said market house stall until April 30, 1895.

On motion of Commissioner Bass, it was ordered that the Chief of Police and Market Clerk be directed to place parties who rented market stalls on August, 1894, in possession of same by August 10, 1894. The following notice was handed to this plaintiff:

"DURHAM, N. C., August 9, 1894.

" DEAR SIR: In pursuance of an order made by the Board of Commissioners of the town of Durham at its regular monthly meeting, Tuesday, August 7, 1894, you are hereby notified that possession of the stalls of the town market house now occupied by you is hereby demanded of you by the town of Durham, and you are hereby notified that you must remove your effects from the same by 11 o'clock a. m. on Friday, August 10, 1894; otherwise the town of Durham will proceed to take such steps to accomplish same as are authorized by law. Yours truly,

" JNO. W. CARLTON,
" Ch'm'n Market Committee."

That said Carlton was at time of said notice, and for thirty days thereafter, a Commissioner of said town, and chairman of the Market Committee.

IX. That no other notice was served on plaintiff, and no suit brought against plaintiff to eject him from said

stalls, but on August 10, 1894, W. A. Williams, Chief of Police, and J. T. Giddens, Clerk of the Market, together with W. W. Austin, Horace Brown, J. S Scarlett and F. D. Scruggs, the four last named being and acting as regular policemen of the town of Durham, and acting under authority and by direction of the Board of Commissioners of said town, and especially by the direction of John W. Carlton, came to said stalls in said market house, and with force and arms at and in said stalls in said market house and in said state, county and town, unlawfully and wilfully did strike and beat the plaintiff, he, the said plaintiff, not being guilty of any of the violation of laws of the state or the ordinances of the town of Durham, and said plaintiff being then and there in the quiet possession and occupancy of said stalls, and ready, willing and able, then and there, and at all times before then to pay the monthly rents for said stalls to said town, as he had been accustomed and allowed by the town theretofore to do. And the said policemen and clerk, under the direction and advice of said commissioners of said town and J. W. Carlton, proceeded to and did eject this plaintiff from said stalls, subjecting him to great violence and many indigni ties, conveying plaintiff by violence bodily from said stalls, and dropping him on floor of said house; and did then and there unlawfully and wilfully pile large quantities of fresh meat, besides other property of this plaintiff, on the floor of said house, under the feet of those coming in and going out of said house; and did ruin and destroy large quantities of meat belonging to plaintiff, so that same became nearly or quite worthless, and by reason of all of which said unlawful acts, and by depriving him of his right to said stall for the remainder of said term, this plaintiff was greatly endamaged, to-wit: in the sum of fifteen hundred dollars.

X. That the plaintiff, before bringing this action, pre-sented his claim to the lawful municipal authorities, to be audited and allowed, and they refused to allow the same or any part thereof, but disallowed it.

Wherefore plaintiff demands judgment that he recover of the defendants the sum of fifteen hundred dollars, for the costs and such other and further relief as to the court may seem just, and to which the plaintiff may be entitled.

*Answer of the Town of Durham :*

The defendant, the Town of Durham, answering the complaint of the plaintiff, says :

" I. That the allegations of Article I. of the complaint are admitted.

" II. That the allegations of Article II. are admitted.

" III. That the allegations of Article III. are admitted.

" IV. That the allegations of Article IV. are admitted.

" V. That the allegations of Article V. of the complaint are admitted, except the statement therein contained, that the plaintiff became a tenant of said town, which statement is hereby expressly denied, and except the further statements therein contained that the plaintiff was occupying Stall No. 3, with the assent of the governing authorities of said town, and continued to occupy Stalls Nos. 2 and 3, and pay rent for the same to the town, as required by the Section 3 of Chapter 10 of the ordinances of said town, which said statements are likewise denied.

" VI. That it is admitted that the plaintiff occupied the said stalls until August 10, 1894, and that he paid his rents to said town ; it is likewise admitted that no annual pub-lic rentings had been had as prescribed by said ordinances ; but any suggestion therein contained that plaintiff became a tenant of said town, or that he had any authority

acquired from prior occupancy to hold from year to year is denied ; and it is likewise denied that his license was in force at said time.

" VII. That the allegations of Article VII. are admitted, except the statement therein contained that on the first day of August, 1894, there was a pretended renting of Stalls Nos. 2 and 3, and as to said statement, said defendant states that said renting was actual and *bona fide*.

" VIII. The allegations of Article VIII. are admitted.

" IX. That the allegations of Article IX. of the complaint are denied except as follows, viz. It is admitted that no other notice than that set out in said Article VIII. was served on the plaintiff, and that no suit was brought against said plaintiff to eject him from said stalls ; it is likewise admitted that the parties entitled to the use of stalls Nos. 2 and 3, by virtue of their public renting thereof on August 1st, 1894, as aforesaid, were put in quiet possession of said stalls on August 10, 1894 ; it is likewise admitted that certain meat belonging to the plaintiffs, was on said day removed from said stalls and placed in a pile on the marble slabs of plaintiff which were used for said purpose, and had been removed from said stalls into the corridors of the market house ; but the defendant expressly denies that the plaintiff was stricken or beaten, or subjected to great violence or to many indignities as vaguely set forth in said paragraph, or that he was carried bodily by violence from said stalls and dropped on the floor of said house as therein alleged ; it is likewise expressly denied that plaintiff was in quiet possession of and occupancy of said stalls, and that plaintiff was not guilty of any violation of the laws of this state or of the ordinances of the town of Durham, or that large quantities of plaintiff's fresh meat, besides other property of plaintiff, were unlawfully and wilfully piled on the floor of said house, under

the feet of those coming in and going out of said house, or that large quantities of meat belonging to plaintiff were ruined and destroyed so that the same became nearly or quite worthless, or that he was deprived of his right to said stalls for the remainder of said term, or that any unlawful acts were done to the plaintiff or that the plainiiff was greatly damaged or that he was endamaged at all: and all the allegations of said Article IX. of plaintiff's complaint not herein before admitted or denied, are hereby expressly denied.

" X. That Article X. is admitted."

And by way of further answer and defense, defendant says:

" 1. That the corporate officers of the Town of Durham have heretofore been elected annually, on the first Monday in May, and that the first Monday of May, 1894, fell on the fifth day of May.

" 2. That on the 6th day of May, 1894, the newly elected Mayor and Commissioners of said town took the oath of office and entered upon the discharge of their corporate duties.

" 3. That it was then too late to give effect to the provisions of Chapter 10, Section 3, of the ordinances of said town, and to rent the stalls in the market house at public auction, in the last week of April, 1894, as therein provided.

" 4. That said officers finding that the said ordinance had been violated for some years, then past, undertook as far as they could, to comply with the law by having a public renting of stalls, including Nos. 2 and 3. That having accordingly, after due notice of same, and after fully complying with the laws of said town, the two stalls were rented at public auction on August 1, 1894.

" 5. That during the year 1894, the plaintiff was in occu-

118—30

pancy of Stalls Nos. 2 and 3 as a verbal licensee on sufferance of the defendant, and that said license was revoked prior to August 10, 1894, by defendant.

" 6. That the plaintiff was never the tenant of the defendant; that he had no vested interest in, or posession of Stalls Nos. 2 and 3, but at most was merely the licensee thereof, and not having rented said stalls at public auction his occupancy of the same was merely permissive and at the will of the defendant.

" 7. That said market-house was at all times during the year 1894 in the possession of the defendant and under the care, control and keeping of the defendant's agents and servants.   That the plaintiff was subject to all the rules and regulations of said market, and that one of said rules was, that the plaintiff should rent his stalls publicly of the defendant, during the last week in April of each year; and that this rule or ordinance of the town had been systematically violated by the plaintiff for seven years, preceding the first day of May, 1894; and that said ordinance likewise provides that the board may revoke at its pleasure any license for any cause which the board may deem sufficient, and that said board, for sufficient cause, prior to August 10, 1894, revoked said license.

" 8. That the defendant is not and ought not to be answerable for the *torts* and assaults, alleged by the plaintiff to have been committed in removing him from said stalls, by person other than this defendant.

" 9. That in affecting said removal, no injury whatever was done plaintiff in mind, body or estate; no force was used; no threat was made; no indignities offered, but on the contrary the greatest care was taken to protect plaintiff in his person and property, and the Chief of Police Williams, and the Market Clerk Giddens, appointed under the resolution of Commissioner Bass, were careful, capable,

painstaking men, who knew the duties and responsibilities of their positions. As soon as plaintiff discovered that the said stalls must be vacated, he quit the same of his own head, and that no violence or injury of any kind was done him.

"That plaintiff's fresh meat was carefully taken from said stalls and placed upon marble slabs used theretofore by plaintiff for said purpose, which slabs were carefully arranged and placed in the corridors of the Market House, and that since said time, and almost immediately, plaintiff complied with the law and rented of the defendant a stall in said Market-House, obtaining a valid license so to do, and hath ever been since said time using and occupying said stall in compliance with the laws of the town and State.

"Wherefore, having fully answered, the defendant prays that it must go hence without day, and recover of plaintiff its costs to be taxed by the clerk of this court."

Both parties appealed from the judgment rendered.

*J. W. Graham* and *Boone, Merritt & Bryant,* for plaintiff.

*F. A. Green* and *Fuller, Winston & Fuller,* for defendant.

AVERY, J. (after stating the case) : Upon offering the required testimony as to character and capacity, the defendant at the regular time provided in the ordinances of the town for renting (during the last week in April, 1887) rented stall No. 2 in the defendant's market house at a rental of thirteen dollars per month, and there being no further public rentings in pursuance of the ordinance until April, 1894, the plaintiff, though still retaining stall No. 2, added stall No. 3, by purchasing the business of one M. Openheimer, who at the first letting leased and

occupied it. Since the plaintiff took possession under the license in 1887, there has been continuously a provision in the town laws that " such license (as that granted him) *may be revoked* " *for any cause which the board may deem sufficient.*

Where parties contract in contemplation of a statute then in force, its provisions are deemed to constitute a part of the agreement, just as though they had been incorporated in it. *Koonce* v. *Russell*, 103 N. C., 179 ; Cooley Const. Lim., p. 285 ; *McCless* v. *Meekins*, 117 N. C., 34 ; *Strickland* v. *Pennsylvania*, &c., 21 L. R. A., 16.

A licensed occupant of a stall in a market-house has no such interest in the soil as he acquires by virtue of a contract of lease for a store or dwelling house. He cannot recover possession of it by an action in the nature of ejectment if wrongfully evicted from it, but as a mere licensee can at most maintain an action for damages. *Strickland* v. *Pennsylvania*, &c., *supra*. When the plaintiff entered, and while remaining as an occupant of the stall, the by-law made his license revocable at the discretion of the authorities of the town, for any reason they deemed sufficient. That he paid his money for a license held by any such precarious tenure was his own fault, if fault it was. He was under no compulsion to submit to any such terms if he felt averse to doing so. He and all other persons were presumed to know the law and to conduct such business with an eye to its provisions. It is not material that the town had the power to repeal its ordinance, when it had never in fact annulled or altered it in the least particular. Where a legislative committee is authorized to enter into a contract for the public printing, the act empowering them to do so may either simply create them agents of the State to enter into an agreement, in which case they are left subject to any existing law relating to the manner of

entering into such contract, or the law-making power may define their duties in the statute, constituting the agency, in such a way as by implication or directly to repeal pre-existing laws on the subject. This illustration is used because it is one familiar to those who have observed legislative proceedings. In the same way, succeeding boards of commissioners are deemed to act subject to the provisions of ordinances passed by their predecessors in authority, until they see fit to repeal them directly or to substitute others inconsistent with the older enactments.

It was insisted for the defendant on the argument that by holding over after the time fixed in the ordinance for an annual meeting, the defendant became a tenant from year to year. It is true that when land is leased for a year and the tenant is suffered to hold over without any new contract, the law implies a promise on the part of the lessee to pay the same rent, and on the part of the lessor to agree to the same terms, and the tenancy becomes one from year to year. But no such implication can arise while a law stands upon the statute books of the town, declaring in express terms that a meat stall is held under a license revocable at the pleasure and discretion of the licensor—not under a lease, if from the nature of this police power another relation could be created in its exercise in any case, except by express contract. *Hatch* v. *Pendergast*, 15 Md., 252. One, who occupies a stall under a license granted in pursuance of the provisions of an ordinance, defining the rights and duties of the town (such as that under which defendant entered), is not a lessee but a mere licensee. He acquires no right in the soil, but is an occupant at the absolute pleasure and discretion of the licensor, 27 Am. & Eng. Corp. Cases p. 631 ; *Barry* v. *Kennedy*, 11 Abbott Pr. N. S. (N. Y.) 421 ; 14 Am. & Eng. Enc. 463 ; *Hatch* v. *Pendergast*, *supra* ;

*Charleston* v. *Goldsmith,* 2 Spears (S. C.) 428; *Strickland* v. *Pennsylvania, supra*; *Rose* v. *Mayor*, 31 Am. Rep., 308.

The fact that the town prescribes, in its ordinances, a day on which there shall be an annual renting of the stalls, confers no right on one who has voluntarily become an occupant of one of them upon the terms set forth in the ordinances. If he and all other occupants were subject to removal at discretion, the town could either advertise and offer all stalls in April or evict all the tenants at any other time and substitute others by a public or private letting, in their places.

On July 10 in pursuance of an order of July 3, 1894, a notice that the stalls would be offered publicly for rent on August 1, 1894, was posted at the market-house and seen by the plaintiff, who was present also when his own stall was rented, and was notified on August 9 to vacate on August 10, 1894. He paid no attention to the notice, and persisted in his refusal to remove his property or leave himself, when the policeman appeared upon the scene at the appointed hour on that day. He suffered them to remove a heavy safe, and to place his fresh beef, after removal, on marble slabs without assistance and without a request in relation to the matter. He then placed himself upon his block, which it was necessary to move, and thereby forced the policemen to lift the block up with him on top of it, and carry both out of the way. About the time they reached the place selected for depositing the block, the plaintiff fell off and caught " upon his all fours." In no aspect of the evidence is this either an unlawful expulsion or a lawful expulsion conducted in a manner so unnecessarily violent as to entitle the expelled party to damages, either compensatory or vindictive.

Where a guest in a hotel, a passenger on a railway

train, or a ticket holder at a theatre creates a disturbance, though either has a right under his contract to remain so long as he acts with due regard to the rights of others,. the proprietor, conductor or manager or their agents may use the amount of force necessary to expel. *State* v. *Steele*, 106 N. C., 766. But markets are necessary to the life of the residents of a municipality, and for that reason it has been held that the right to establish and regulate them was. implied in the very creation of such corporations. Having the right to regulate these places for the public good, · they would be powerless to carry out that duty if, after the license of an occupant of ·· stall is revoked or expires, they do not have the same power through their lawful officers to expel him, which an innkeeper or a conductor has to protect the guests or passengers, representing the public, who place themselves under his care.

The plaintiff had become a trespasser, not by holding over under any contract which gave him the least interest in the premises, but like one who enters a hotel under an implied license, but forfeits his right to remain by misconduct.

The testimony does not show that the officers used more force than was necessary to eject the plaintiff, and therefore, even though they acted under the orders of the Commissioners, the plaintiff can recover neither exemplary nor punitive damages. The plaintiff had no right to recover in any aspect of the evidence, and it follows that there was error in refusing the prayer of the defendant for instructions to that effect, while there was no error in refusing to tell the jury that the plaintiff could recover punitive or any other kind of damage. There was error in the ruling from which the defendant appealed, for

which a new trial must be granted; and there was no error in that excepted to by the plaintiff.

Affirmed in plaintiff's appeal.    New trial in defendant's appeal.