JETTIE BRADY GALLIGAN v. TOWN OF CHAPEL HILL

No. 50

(Filed 6 January 1970)

1. Municipal Corporations § 12— policeman — governmental function

A police officer in the performance of his duties is engaged in a governmental function.

2. Municipal Corporations § 12— waiver of governmental immunity

In the absence of statutory authority a municipality has no power to waive its governmental immunity.

3. Municipal Corporations § 12— waiver of governmental immunity — purchase of liability insurance

In the absence of some affirmative action by a municipality, the purchase of motor vehicle liability insurance constitutes a waiver of its governmental immunity to the extent of the insurance policy so obtained. G.S. 60-191.1.

4. Statutes § 5— statutory construction

The intent of the Legislature controls the interpretation of a statute, and in ascertaining this intent the courts should consider the language of

the statute, the spirit of the Act and what it sought to accomplish, and the changes to be made and how these should be effected.

**5. Evidence § 3— facts within common knowledge — renewal of liability insurance**

It is common knowledge that liability insurance must be renewed periodically and that a renewal policy often has slight modifications as to the vehicles or employees insured or other similar changes.

**6. Municipal Corporations § 12— waiver of governmental immunity — renewal of liability insurance — prior resolution against waiver**

Municipality did not waive its governmental immunity for the negligent operation of a police car by its renewal in 1965 of a liability insurance policy on such vehicle, where the municipal governing body had passed in 1951, after the enactment of G.S. 160-191.1, a resolution against waiver of its governmental immunity, the municipality not being required to adopt a new resolution against waiver each time it renews a liability policy or acquires a new policy, since its resolution remains in effect until amended, rescinded or repealed by the governing body.

ON *certiorari* to review the decision of the North Carolina Court of Appeals, reported in 5 N.C. App. 413, 168 S.E. 2d 665, reversing a judgment entered by *Clark, J.,* at the January 20, 1969 Session of Superior Court of ORANGE County, which dismissed the action as to the Town of Chapel Hill.

Plaintiff instituted this action to recover for personal injuries and property damage alleged to have been sustained by her in a vehicular collision on 18 July 1965. She alleges, and the defendant (Town) admits, that at the time of the collision Harold P. Smith was a police officer engaged in his official duties and was operating a car owned by the Town. In its answer the Town pleaded immunity from liability for torts committed by its employees while performing a governmental function and prayed that the action be dismissed as to it. The Town's plea in bar was heard prior to the trial of the case on its merits. After hearing the evidence on this plea, the presiding judge made the following findings of fact and conclusions of law:

"The plaintiff alleged and the defendant Town of Chapel Hill admitted that at the time of the collision giving rise to the plaintiff's alleged cause of action, the defendant Harold P. Smith was a police officer of the Town of Chapel Hill and that he was acting within the course and scope of his employment at the time of the collision and that in the exercise of its powers as a municipal corporation, it maintained a police force, that Harold P. Smith was a policeman and that at the time of the collision, he was in the performance of his duties as a policeman. The

plaintiff did not contend that the Town of Chapel Hill was not engaged in a governmental function of a municipality at the time of the collision giving rise to the plaintiff's alleged cause of action. On June 25, 1951, the governing body of the Town of Chapel Hill unanimously adopted and enacted a resolution or ordinance to the effect that the governmental immunity from liability for torts by the Town of Chapel Hill was not waived, the ordinance specifically stating that under no circumstances or in any respect as suggested by Chapter 1015, Session Laws of 1951 (G.S. 160-191, et seq.) or in any other manner did the defendant Town of Chapel Hill waive its governmental immunity for damages to property or injury to persons as a result of its activities. The resolution and ordinance has not since been repealed, rescinded or amended. The defendant Town of Chapel Hill had purchased a policy of motor vehicle liability insurance and said policy was in full force and effect at the time the plaintiff's alleged cause of action arose, but by purchasing said motor vehicle liability policy, the defendant Town of Chapel Hill did not waive its governmental immunity from liability for torts under the provisions of G.S. 160-191.1 for that it took affirmative action in passing said resolution and ordinance of June 25, 1951. Based upon the foregoing findings of fact, the Court concludes that the defendant Town of Chapel Hill is immune from liability for torts committed by its agents and employees when engaged in the performance of a governmental function and that the action against the defendant Town of Chapel Hill should be dismissed."

The court thereupon dismissed the action against the Town. Plaintiff then took a voluntary nonsuit as to the individual defendant Harold P. Smith and appealed to the North Carolina Court of Appeals.

Plaintiff did not except to Judge Clark's findings of fact. She assigned as error his ruling that the Town had taken affirmative action retaining its governmental immunity from liability for torts of its agents, servants or employees.

The Court of Appeals reversed the judgment entered by Clark, J., and the Town filed a petition for *certiorari* in this Court, which petition was allowed on September 23, 1969.

*Emery B. Denny, Jr., Perry C. Henson, and Daniel W. Donahue for defendant appellant.*

*Ottway Burton for plaintiff appellee.*

MOORE, J.

[1]    Prior to the legislative enactment on 14 April 1951 of Chapter 1015 of the Session Laws of 1951, now codified as G.S. 160-191.1 to 160-191.5, the common law rule of governmental immunity prevailed in North Carolina. *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42. Under this common law rule a municipality is not liable for the torts of its employees or agents committed while performing a governmental function. A police officer in the performance of his duties is engaged in a governmental function. As stated in *Croom v. Burgaw,* 259 N.C. 60, 129 S.E. 2d 586:

"A police officer duly appointed by a municipality is not an agent or servant of the city or town in the sense that the doctrine of *respondeat superior* applies. A municipality is not liable in tort for the wrongful acts of its police officers committed in connection with the performance of their duties as such officers. *McIlhenney v. Wilmington,* 127 N.C. 146, 37 S.E. 187, 50 L.R.A. 470; *Parks v. Princeton,* 217 N.C. 361, 8 S.E. 2d 217; *Gentry v. Hot Springs,* 227 N.C. 665, 44 S.E. 2d 85."

[2]    In the absence of statutory authority a municipality has no power to waive its governmental immunity. *Stephenson v. Raleigh,* 232 N.C. 42, 59 S.E. 2d 195.

G.S. 160-191.1 reads in pertinent part as follows:

"The governing body of any incorporated city or town, by securing liability insurance as hereinafter provided, is hereby authorized and empowered, but not required, to waive its governmental immunity from liability for any damage by reason of death, or injury to person or property, proximately caused by the negligent operation of any motor vehicle by an officer, agent or employee of such city or town when acting within the scope of his authority or within the course of his employment. Such immunity is waived only to the extent of the amount of the insurance so obtained. Such immunity shall be deemed to have been waived in the absence of affirmative action by such governing body."

Following the enactment of this statute, the Board of Aldermen of the Town of Chapel Hill on 25 June 1951 unanimously passed the following resolution:

"WHEREAS, Chapter 1015 of the Session Laws of 1951 provides a method whereby municipalities may waive their governmental immunity; and WHEREAS, one provision of said law seems to require positive action on the part of this Governing

Body with respect to whether or not it desires to waive such governmental immunity; and, WHEREAS, it is the opinion of this Governing Body that the waiving of such immunity is not to the best interest of this municipality: NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF ALDERMEN OF THE TOWN OF CHAPEL HILL, N. C. [that the Town] does not under any circumstances or in any respect as suggested by Chapter 1015 of the Session Laws of 1951 or in any other manner waive its governmental immunity for damages to property or injury to persons as a result of its activities."

This resolution has not since been repealed, rescinded or amended.

At the hearing on the plea in bar the evidence before Judge Clark showed that on 11 July 1965 Hartford Accident and Indemnity Company issued a liability insurance policy to the Town effective to 11 July 1966. This policy was a renewal of one which had been in effect since sometime prior to 1951 and was in full force and effect on the date of plaintiff's alleged injuries. Defendant admits that the policy covered the car operated by the policeman Harold P. Smith at the time of the collision in suit and that it protected him from individual liability for the negligent operation of this motor vehicle while he was acting within the course of his employment by the Town.

[6] The question for decision is: Did the Town waive its defense of governmental immunity from the tort alleged in this action to the extent of the liability insurance policy which it purchased effective 11 July 1965, or was this immunity preserved by the resolution adopted by the Board of Aldermen on 25 June 1951?

[3] In the absence of some affirmative action by the Town, the purchase of liability insurance would have constituted a waiver of its governmental immunity to the extent of the insurance policy so obtained. G.S. 160-191.1; *White v. Mote*, 270 N.C. 544, 155 S.E. 2d 75. However, on 25 June 1951 the Town did take affirmative action in a most positive manner by the adoption by its Board of Aldermen of the resolution which contained no time limit. Does this resolution continue in effect until repealed or is affirmative action required each time the Town renews or purchases additional insurance?

[4] The intent of the Legislature controls the interpretation of the statute. To ascertain this intent the courts should consider the language of the statute, the spirit of the Act and what it sought to accomplish, the change or changes to be made and how these should

be effected. It should be construed contextually and harmonized if possible to avoid absurd or oppressive consequences. *Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1; *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797; 7 Strong's N. C. Index 2d, Statutes § 5.

In 5 McQuillin, Municipal Corporations § 15.42 (3d Ed., 1969), it is stated that "when bylaws or ordinances are not limited as to the time of their operation they never become obsolete, but continue in force until legally repealed or superseded"; and in 6 McQuillin, Municipal Corporations § 22.33 (3d Ed., 1969) it is stated that "an ordinance properly proved is presumed to have continued in force until the contrary is shown, and the burden of proof is on one who asserts the contrary."

In *Hutchins v. Durham*, 118 N.C. 457, 24 S.E. 723, 32 L.R.A. 706, this Court said:

> ". . . It is not material that the town had the power to repeal its ordinance, when it had never in fact annulled or altered it in the least particular. . . . In the same way succeeding boards of commissioners are deemed to act, subject to the provisions of ordinances passed by their predecessors in authority, until they see fit to repeal them directly or to substitute others inconsistent with the older enactments."

[5, 6]   It is common knowledge that liability insurance must be renewed periodically and that a renewal policy often has slight modifications as to the vehicles or employees insured or other similar changes. To require a town to adopt a new resolution each time it renews a liability insurance policy or acquires a new liability policy would place an unnecessary and useless burden upon the town and impose a condition not provided for in the statute or contemplated by the General Assembly. No existing right was taken from its citizens or from others by the passage of the resolution of 25 June 1951 by the Board of Aldermen. To the contrary, the Town, after finding that it was for the public interest, simply sought to retain the immunity which it had always enjoyed. The Town did, however, provide protection to those who might be injured by the negligent acts of its agents or employees.

We conclude that the resolution adopted by the Board of Aldermen on 25 June 1951 was affirmative action within the contemplation of G.S. 160-191.1, and that by the adoption of this resolution the Town retained its governmental immunity until such time as the Board of Aldermen of the Town of Chapel Hill amends, rescinds or repeals this resolution.

We hold, therefore, that the judgment of the trial court dismissing the action as to the Town of Chapel Hill was proper, and that its judgment should have been sustained. The decision of the North Carolina Court of Appeals holding otherwise is

Reversed.