STATE OF NORTH CAROLINA v. R. L. ARMISTEAD, WILLIAM R. ARMISTEAD, HENRY BAKER, R. A. HENDRICKS III, ABNER C. JONES III, PAUL IRVIE TREGEMBO AND ROBERT DEE TREGEMBO

No. 732SC544

(Filed 14 November 1973)

Admiralty; State § 2; Waters and Watercourses § 6— Civil War cannons — underwater archaeological artifacts — ownership in State

In an action to determine ownership of certain items of ordnance rolled into the Roanoke River and abandoned by the Confederate States of America in 1865, the trial court properly granted summary judgment for the State based on findings of fact that the cannons in question were archaeological artifacts, that they had lain on the bottom of the Roanoke River since 1865, and that the river was a navigable body of water and based on the conclusion of law that the cannons were underwater archaeological artifacts within the meaning of G.S. 121-22.

APPEAL from *Cowper, Judge,* 2 April 1973 Session of MARTIN County Superior Court.

State v. Armistead

Defendant appellants in this case are a group of Civil War enthusiasts and collectors, three of whom are residents of North Carolina and the remainder of whom are residents of Alabama. After extensive research into Civil War records, they determined that the Confederate States of America had in 1865 abandoned certain items of ordnance at Fort Branch, North Carolina, by rolling them off a bluff and into the Roanoke River. Defendants began in June, 1972, a diving expedition into that part of the Roanoke River adjacent to the site of Fort Branch at a spot known as Rainbow Bluff in Martin County, North Carolina. On 8 July 1972, the expedition discovered and brought to the surface three cannons, remnants of artillery carriages, and sundry hardware. On the advice of W. R. Armistead—who was the head of the Restoration Laboratory at the University of Southern Alabama and had experience in the preservation of such historical objects—the cannons and other pieces of ordnance were transported to and immersed in a fresh water pond on a nearby farm. The Department of Archives and History executed on 20 January 1973, a contract of loan of the cannons to the Fort Branch Battlefield Commission for the purpose of a public display at Hamilton, N. C.

On 26 January 1973, plaintiff, through its agent, the Department of Archives and History removed the cannons from the pond and transported them by flatbed truck to Hamilton, where they were put on display.

The present action by the State was instituted on 28 August 1972, when the cannons were still immersed in the pond. In its complaint, the State sought injunctive relief and prayed for judgment that the State of North Carolina is the owner of the cannons and for costs in the action.

Defendants Baker, R. L. Armistead, W. R. Armistead and R. A. Hendricks III, deny that the cannons are the property of the State and that they wrongfully removed them from the river. The defendants claim that the State knew of their activities, and that they allowed them to expend their time and money in the recovery of the cannons with the purpose of confiscating them as soon as they were removed. Furthermore, they claim that the cannons were abandoned property, and they are entitled to them at common law. By way of counterclaim, defendants seek $10,000 as reimbursement for their services in recovery of the cannons, $20,000 for deprivation of possession

of the cannons, and $10,000 for damage to the cannons incident to the removal to Hamilton.

The record from the complaint to the final order of Judge Cowper is replete with an exhaustive series of affidavits, motions, temporary restraining orders and preliminary injunctions, all of which are addressed to the proposition that various parties, persons and agencies should refrain from various courses of conduct relative to the possession, location and physical condition of the cannons. It does not behoove us to explicate further this portion of the record inasmuch as no material facts therein are in dispute.

On 19 February 1972, plaintiff moved for summary judgment against R. L. Armistead, William R. Armistead, Henry Baker and R. A. Hendricks III, on the ground that there was no material issue of fact and that plaintiff was entitled to judgment as a matter of law. They moved also for default judgment against Abner C. Jones III, Paul Irvie Tregembo and Robert Dee Tregembo since they were served and failed to answer. In addition, they moved to dismiss all counterclaims for lack of jurisdiction, since the State had not consented to be sued.

Judge Cowper made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

1. That on July 8, 1972, the defendants Robert L. Armistead, William R. Armistead, Henry Baker, R. A. Hendricks, III, and others did remove from the bottom of the Roanoke River the three cannons and portions of carriages described in the complaint filed herein.

2. That the three cannons are the type used during the American Civil War by the troops of the Confederate States of America and are archaeological artifacts.

3. That the defendants removed said artifacts from the river without the permission of the plaintiff and without first obtaining a permit or license from the Office of Archives and History, Department of Art, Culture and History.

4. That the Roanoke River is a navigable body of water and is capable of being navigated by large commercial vessels

from its mouth to Weldon, North Carolina, a distance of about 130 miles; that the river at the point where said artifacts were removed by defendants lies within that portion of the river referred to herein and is navigable in fact.

5. That said artifacts have been lying on the bottom of the Roanoke River since 1865.

6. That all defendants except Abner C. Jones, III, have been duly served with process.

7. That the defendants Paul Irvie Tregembo and Robert Dee Tregembo have not filed answer or otherwise pleaded herein, and that the time for answering or otherwise pleading has expired.

### CONCLUSIONS OF LAW

1. That pursuant to G.S. 121-22 the plaintiff, State of North Carolina, is the owner of and is entitled to possession of all underwater archaeological artifacts which have remained unclaimed for more than ten years on the bottom of any navigable waters in the State and such artifacts are subject to the exclusive dominion and control of the State.

2. That the artifacts described in the complaint are underwater archaeological artifacts within the meaning of G.S. 121-22, and the plaintiff, State of North Carolina, is the owner thereof and entitled to possession of the same.

3. That the counterclaims asserted by defendants in their respective answers fail to state a claim against plaintiff upon which relief may be granted."

Judge Cowper thereupon ruled that the State is the owner of the cannons. The motions for summary judgment and default judgment were granted. The motion to dismiss all counterclaims was granted on the grounds of lack of jurisdiction and failure to state a claim upon which relief may be granted. In addition plaintiff's voluntary dismissal as to Abner C. Jones III, was approved.

From the above judgment, defendants appeal.

*Attorney General Morgan, by Assistant Attorneys General Costen and Giles, for the State.*

*Ezzell and Henson, by Thomas W. Henson, for defendant appellants.*

MORRIS, Judge.

There is no dispute as to material issues of fact. Both assignments of error present to this Court the question of whether the three cannons found by defendants in the Roanoke River are archaeological artifacts within the purview of G.S. 121-22 and consequently, whether the State is the owner thereof. Defendants' first assignment of error is to the granting of summary judgment in favor of plaintiff based on the finding of fact that the cannons were archaeological artifacts and the conclusion of law that they were underwater archaeological artifacts within the meaning of G.S. 121-22.

G.S. 121-22 provides:

"Subject to chapter 82 of the General Statutes, entitled 'Wrecks' and to the provisions of chapter 210, Session Laws of 1963 [§§ 121-7, 121-8.1 to 121-8.3 and 143-31.2], and to any statute of the United States, the title to all bottoms of navigable waters within one marine league seaward from the Atlantic seashore measured from the extreme low watermark; and the title to all shipwrecks, vessels, cargoes, tackle, and underwater archaeological artifacts which have remained unclaimed for more than 10 years lying on the said bottoms, or on the bottoms of other navigable waters of the State, is hereby declared to be in the State of North Carolina, and such bottoms, shipwrecks, vessels, cargoes, tackle, and underwater archaeological artifacts shall be subject to the exclusive dominion and control of the State."

It is conceded by the defendants that the cannons have remained in the river for more than 10 years and that the Roanoke River is a navigable water. Thus, it remains only for us to determine whether a cannon rolled off a bluff into the river by the Confederate Army in 1865 is an archaeological artifact.

If the cannons are not archaeological artifacts and G.S. 121-22 does not apply, the defendants contend that they are entitled to the cannons under the common law regarding abandoned property. Specifically, it is their contention that G.S. 121-22 modified the applicable common law rule as established in *Bruton, Attorney General v. Enterprises, Inc.*, 273 N.C. 399, 160 S.E. 2d 482 (1968). Since the statute modifies the common law, they contend, it must be strictly construed. Without regard

to the holding of *Bruton, supra,* we hold that under established rules of statutory interpretation, the cannons are archaeological artifacts and title is in the State.

It has been consistently held by the appellate courts of this State that a statute must be construed insofar as possible to effectuate the intent of the legislature. *Person v. Garrett, Comr. of Motor Vehicles,* 280 N.C. 163, 184 S.E. 2d 873 (1971) ; *State v. Johnson,* 278 N.C. 126, 179 S.E. 2d 371 (1971) ; *Galligan v. Town of Chapel Hill,* 276 N.C. 172, 171 S.E. 2d 427 (1970). In order to ascertain the purpose of the legislature relative to a particular piece of legislation, the courts are to consider the language of the statute, the spirit of the Act, and what it sought to accomplish. *Galligan v. Town of Chapel Hill, supra.*

An examination of the face of the statute and its legislative history (Chapter 533, Session Laws of 1967) reveal the manifest intent of the legislature to vest title in the State of *all* archaeological artifacts recovered from navigable waters. Nowhere does it appear that the legislature intended to limit the coverage of G.S. 121-22 to artifacts associated with shipwrecks.

Nor are appellants aided—as they contend—by the rule of *ejusdem generis.* It is their position that the general language "and archaeological artifacts" in G.S. 121-22, is restricted in its meaning by the preceding specific language "shipwrecks, vessels, cargoes, tackle." *Ejusdem generis* is to be relied upon only in determining legislative intent where there is uncertainty; it will not be used to defeat legislative intent. *State v. Fenner,* 263 N.C. 694, 140 S.E. 2d 349 (1965). See also *State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712 (1967).

Appellants would have us restrict the meaning of the term "archaeological" to items of antiquity, i.e., *circa* the fall of the Roman Empire. Such a construction would be entirely unreasonable in light of our previous holdings regarding interpretation of specific words. A word within a statute will not be interpreted out of context, but must be construed as a part of the composite whole and given only the meaning that other provisions and the clear intent of the Act will permit. *Myrtle Desk Co. v. Clayton,* 8 N.C. App. 452, 174 S.E. 2d 619 (1970). In light of the clear legislative intent to vest title of Civil and Revolutionary War vessels in the State, it is inconceivable that the use of the term "archaeological artifacts" in the same Act was intended to limit artifacts not associated with shipwrecks to a period prior to the Fifth Century, A.D.

Since there was no dispute as to any issue of material fact, and since the cannons are archaeological artifacts belonging to the State, the trial judge did not err in his granting of summary judgment in favor of the State. Likewise, the failure to grant summary judgment in favor of defendant was proper.

Affirmed.

Judges CAMPBELL and HEDRICK concur.