DONALD PHILLIP KLASSETTE BY HIS GUARDIAN, JOHN PHILLIP KLASSETTE
v. MECKLENBURG COUNTY AREA MENTAL HEALTH, MENTAL RE-
TARDATION AND SUBSTANCE ABUSE AUTHORITY

No. 8726SC583

(Filed 2 February 1988)

1. **Negligence § 29.2— detoxification center—refusal to admit unconscious plaintiff—decision on reference to another facility—due care**

     Where a supervisor of a county detoxification center refused to admit the unconscious plaintiff to the center as a client after he was informed that plaintiff had suffered a drug overdose but decided that plaintiff was intoxicated with alcohol, the supervisor was required by N.C.G.S. § 122C-211 and the center's written policies and procedures to use due care in deciding whether or not to refer plaintiff to another facility for treatment.

2. **Negligence § 29.2— assumption of duty of care by actions**

     Although a supervisor of a county detoxification center refused to admit the unconscious plaintiff to the center as a client after he was informed that plaintiff had suffered a drug overdose but decided that plaintiff was intoxicated with alcohol, the supervisor assumed a duty of care toward plaintiff by his conduct when he locked the unconscious plaintiff in plaintiff's car at the center's main entrance and regularly monitored plaintiff's condition throughout the night.

3. **Negligence § 35.2— action against detoxification center—voluntary intoxication not contributory negligence**

     Plaintiff's voluntary intoxication from drugs did not constitute contributory negligence which barred plaintiff's recovery against a county detoxification center for negligence in failing to refer plaintiff to another facility for medical treatment.

4. **Evidence § 47.1— expert testimony—basis for opinion**

     A neurologist's opinion testimony as to the time at which plaintiff suffered irreversible brain damage was not speculation and was properly admitted where it was based on assumed facts in previous hypothetical questions and the neurologist's expertise and actual treatment of plaintiff.

5. **Evidence § 40.1; Negligence § 27— internal investigation of incident—opinion on medical emergency—knowledge of policies and procedures—admission of testimony**

     In an action against a county detoxification center for negligence in failing to refer plaintiff, who was unconscious from a drug overdose, to another facility for medical treatment, the trial court properly excluded questioning of the center's acting director concerning the center's internal investigation of the incident in question and properly barred plaintiff's counsel from asking the director for his personal opinion whether an unconscious person presented a medical emergency. However, the trial court erred in refusing to permit the director to testify as to his personal knowledge of the center's interpretation

and implementation of its own written policies and procedures concerning whether a state of unconsciousness was a medical emergency. N.C.G.S. § 8C-1, Rules 407, 702 and 704.

Chief Judge HEDRICK concurs in the result.

Judge MARTIN concurs with the majority that plaintiff is entitled to a new trial for the reasons contained in part I of this opinion.

APPEAL by plaintiff from *Gray, Judge.* Judgment entered 13 February 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 2 December 1987.

*John A. Mraz, P.A., for plaintiff-appellant.*

*Palmer, Miller, Campbell & Martin, by Douglas M. Martin, for defendant-appellee.*

GREENE, Judge.

This appeal arises from plaintiff's negligence suit against defendant for its operation of the Seventh Street Detoxification Center, a treatment center for drug and alcohol abuse in Charlotte, North Carolina (hereinafter, the "Center"). The trial court entered directed verdict against plaintiff at the close of plaintiff's evidence. Viewing the evidence in the light most favorable to plaintiff reveals that plaintiff's friend drove plaintiff to the Center around midnight one evening. Plaintiff had injected himself with a drug which rendered him unconscious. Plaintiff's friend related plaintiff's condition to a Center employee who apparently offered no help. The friend then called the Center from a public telephone and described plaintiff's condition to the shift supervisor. Although the friend informed the supervisor that plaintiff was in a car at the Center's main entrance, the supervisor refused to admit plaintiff into the Center since the friend *would not take responsibility for admitting plaintiff and plaintiff could not admit himself.* After the friend went home, the shift supervisor found plaintiff lying in the back seat of plaintiff's automobile at the main entrance of the Center. The supervisor concluded plaintiff was alcoholically intoxicated, locked the doors of the automobile and took the car keys with him. The supervisor monitored plaintiff's condition at intervals of approximately 45 minutes to an hour until 5:00 a.m. the next morning. At that time, the supervisor discovered plaintiff's breathing and skin color had deteriorated and called an ambulance.

Plaintiff was diagnosed as having severe permanent brain damage caused by oxygen deprivation. Doctors testified on plaintiff's behalf that plaintiff would have had no brain damage at the time he was brought to the Center. Both doctors testified the drugs in plaintiff's blood system were insufficient alone or together to cause the resulting brain damage. However, the trial court barred certain testimony on the specific time at which plaintiff suffered irreversible brain damage. The court also barred testimony by the Center's acting director on the application and interpretation of the Center's written policies and procedures. At the close of plaintiff's evidence, the trial court entered directed verdict for defendant.

---

At the outset, we note the parties expressly stipulated that certain portions of the transcript would be omitted from the record on appeal. However, a remaining portion of the transcript reveals some dispute whether defendant had waived its governmental immunity by purchasing liability insurance under N.C.G.S. Sec. 153A-435 (1987). Although the trial court apparently denied defendant's motion pertaining to that plea in bar, defendant has not appealed that ruling. As we therefore assume defendant waived any governmental immunity as provided under Section 153A-435, we need not determine whether defendant's failure to appeal the denial of its motion would itself constitute a valid waiver of its governmental immunity. *Cf. Galligan v. Town of Chapel Hill,* 276 N.C. 172, 175, 171 S.E. 2d 427, 429 (1970) (municipality has no authority to waive its governmental immunity absent express statutory authority).

Defendant has similarly not argued any possible limited immunity from civil liability under N.C.G.S. Sec. 122C-210.1 (1986) (no "facility" or staff held civilly liable for examination of "client" where they abide by "accepted professional judgment, practices and standards"); *compare* Sec. 122C-3(14) ("facility" includes any "person" providing services under the statute) *with* Sec. 122C-3(28) ("person" includes area authority). As plaintiff was apparently not a "client" of the Center and as neither party has discussed possible limited immunity under Section 122C-210.1, we express no opinion whether its statutory standard of "accepted professional judgment" applies to the treatment of non-clients such as plaintiff.

This appeal therefore presents only the following issues: I) where defendant's employee refused to admit an unconscious plaintiff to a county detoxification facility, whether defendant's employee either (A) owed or (B) assumed a duty of care in further attending plaintiff's condition without referring plaintiff for medical treatment; II) whether the trial court properly barred plaintiff's doctor from testifying as to the specific time at which plaintiff's condition required medical attention in order to prevent serious brain injury; and III) whether the trial court properly excluded all questions concerning the interpretation and application of defendant's written policies and procedures governing admission to the Center.

I

Our standard for reviewing the trial court's directed verdict in this case was set forth in *Mazza v. Huffaker*, 61 N.C. App. 170, 174, 300 S.E. 2d 833, 836, *disc. rev. denied,* 309 N.C. 192, 305 S.E. 2d 734 (1983):

> In passing upon a defendant's motion for directed verdict, the plaintiff's 'evidence must be taken as true, . . . and [the motion] may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiffs.' *Dickenson v. Pake*, 284 N.C. 576, 583, 201 S.E. 2d 897, 902 (1974). In a negligence case, '[i]f the evidence in the light most favorable to the plaintiff, giving him the benefit of all permissible inferences from it, tends to support all essential elements of actionable negligence, then it is sufficient to survive the motion . . . [for a directed verdict].' *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 645, 272 S.E. 2d 357, 360 (1980) (citation omitted). In addition to the rule giving the plaintiff the benefit of the doubt on a motion for nonsuit, 'judicial caution is particularly called for in actions alleging negligence as a basis for recovery.' *Smithers v. Collins*, 52 N.C. App. 255, 260, 278 S.E. 2d 286, 289 (1981) (citations omitted).

The Center was established pursuant to the general provisions of N.C.G.S. Sec. 122C *et seq.* (1986). These provisions are designed to provide, among other things, "services to . . . reduce the disabling effect of . . . substance abuse through a . . . system designed to meet the needs of *clients* . . . ." Sec. 122C-2

(emphasis added). Defendant argues this statutory policy imposes on it a duty of care only to "clients," who are defined as individuals "admitted to and receiving services from" a regulated facility. Sec. 122C-3(6). Defendant correctly points out that there exists in this state no general duty to aid individuals in distress. *See, e.g., Parrish v. Atlantic Coastline R.R.*, 221 N.C. 292, 300, 20 S.E. 2d 299, 304 (1942). Since the Center supervisor refused to admit plaintiff as a "client," defendant therefore claims it owed plaintiff no duty of care whatsoever. Plaintiff's alleged failure to establish a legal duty to plaintiff could constitute grounds for a directed verdict in his negligence case. *See Kilpatrick v. University Mall Shopping Center*, 68 N.C. App. 629, 632, 315 S.E. 2d 786, 788, *disc. rev. denied*, 311 N.C. 758, 321 S.E. 2d 136 (1984). However, the record discloses two bases for defendant's duty of reasonable care to plaintiff.

A

[1]  The detailed statutory scheme for treating substance abusers itself necessarily implies some duty of care toward those prospective clients who are actually denied admission to regulated facilities. For example, Section 122C-211, which governs voluntary admission of substance abusers, clearly provides for some obligation to those individuals denied admission to the facility:

> An individual may not be accepted as a client if the facility determines that the individual does not need or cannot benefit from the care, treatment, habilitation, or rehabilitation available and that the individual is not in need of further evaluation by the facility. *The facility shall give to an individual who is denied admission a referral to another facility or facilities that may be able to provide the treatment needed by the client.*

Sec. 122C-211 (emphasis added); *cf.* Sec. 122C-202 (Article applies to all facilities). Section 122C-211 imposes on a facility the duty to refer an individual to another facility for treatment: therefore, the facility must necessarily use due care in exercising its judgment *not* to refer an individual for further treatment. *Cf.* Sec. 122C-301(b) (no officer liable if uses "reasonable measures" set forth to assist publicly intoxicated individuals). Given the Center's specific public purpose and the circumstances under which plaintiff was deposited on Center premises with the supervisor's

knowledge, we also note the assertion in the Restatement of Torts that "a possessor of land who holds it open to the public is under a . . . duty to members of the public who enter in response to his invitation." Restatement of Torts (Second) Sec. 314A(3) (1965).

Viewing this evidence favorably to plaintiff discloses that plaintiff's friend apparently brought plaintiff to the Center in response to the Center's publicly stated mandate to help substance abusers. The friend twice informed Center employees, including the shift supervisor, that plaintiff had suffered a drug overdose. However, the shift supervisor decided plaintiff was simply intoxicated with alcohol. Since the Center's treatment mandate includes all "substance abuse" (including alcohol abuse) under Section 122C-3(36), plaintiff was in either event a "prospective client" of the Center under these circumstances. Section 122C-211 embodies the legislature's recognition that denying a prospective client admission to a specific facility does not terminate a duty to refer that individual for further help if necessary. Therefore, we hold the shift supervisor was required to use due care in deciding whether or not to refer plaintiff for further aid.

We recognize the unusual manner by which plaintiff's friend brought plaintiff to the Center and notified the shift supervisor of plaintiff's intoxication. However, the shift supervisor testified he examined plaintiff but did not admit him "because he did not meet the criteria of the Center at that time." While plaintiff's unconscious condition may not have met the Center's criteria for voluntary admission, Section 122C-211 does not limit the scope of the facility's referral duty based on the specific criteria used to deny the individual admission.

Furthermore, defendant's own written policies and procedures specifically dealt with the preliminary evaluation and admission of prospective clients. Several written procedures evidence defendant's voluntary assumption of a standard of care toward prospective clients prior to their actual admission or after admission is denied. For example, one written policy apparently implemented the referral directive of Section 122C-211 as it provided in part that, at the preliminary admission evaluation, the "supervisor on duty shall determine the need for medical services

. . . and provide transportation to the services." Another written procedure provided that "individuals brought to the Center . . . by referral agents shall be admitted . . . *unless* in the judgment of Center staff the individual is not appropriate for detoxification services (including significant medical or physical problems) *and would benefit more from other services.*" (Emphases added.) These written procedures specifically charged the shift supervisor with using his own discretion in their implementation. Furthermore, the stated admission policy of the Center was that it "[would] attempt to treat at some level, or to refer to other appropriate treatment, *anyone* who has developed the disease of alcoholism or who is experiencing problems with alcohol."

We recognize voluntary written policies and procedures do not themselves establish a *per se* standard of due care appropriate to these circumstances; however, they represent some evidence of a reasonably prudent standard of care. *See generally Wilson v. Lowe's Asheboro Hardware, Inc.*, 259 N.C. 660, 666, 131 S.E. 2d 501, 505 (1963) (voluntary adoption of safety code is "some evidence" that a reasonably prudent person would adhere to requirements of code); *Slade v. New Hanover County Bd. of Educ.*, 10 N.C. App. 287, 295-96, 178 S.E. 2d 316, 322, *cert. denied*, 278 N.C. 104, 179 S.E. 2d 453 (1971) (voluntary adoption of rules as guide for protection of public is admissible as some evidence of reasonably prudent conduct).

The legislature's statutory scheme for treating substance abuse under Section 122C requires defendant to refer individuals denied admission to a facility for further help if necessary. Defendant's written procedures are some evidence of the reasonable steps necessary to fulfill that requirement. In light of these requirements, defendant owed plaintiff a duty of care in deciding whether or not to refer plaintiff for medical treatment.

B

[2] Irrespective of any duty of care arising by virtue of the above statutes and procedures, we also conclude defendant's shift supervisor assumed a duty of care toward plaintiff by his affirmative conduct. In locking plaintiff in plaintiff's car and regularly monitoring plaintiff's vital signs, the supervisor clearly took charge of the helpless plaintiff. As we stated in *Davidson and*

*Jones, Inc. v. County of New Hanover,* 41 N.C. App. 661, 666, 255 S.E. 2d 580, 584 (1979):

> The law imposes upon every person who enters upon an act or course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence. *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551 (1951); *Stroud v. Transportation Co.,* 215 N.C. 726, 3 S.E. 2d 297 (1939). The duty to protect others from harm arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, that he will cause danger of injury to the person or property of the other. [Citations omitted.]

At the very least, the supervisor's affirmative conduct precluded any other rescuer from rendering the aid allegedly necessary to prevent plaintiff's brain injuries. *Cf.* Restatement of Torts (Second) Sec. 314A(4) (1965) (one who voluntarily takes custody of another under circumstances depriving other of other opportunity for rescue assumes duty of care).

Of course, whether defendant's shift supervisor did or did not use reasonable care in attending to plaintiff is a question for the jury. We simply hold defendant has not demonstrated that it owed no duty whatsoever to plaintiff as a matter of law. Accordingly, we reverse the trial court's directed verdict and remand for a new trial.

[3] In passing, we reject defendant's contributory negligence argument. Defendant argues that plaintiff's apparently voluntary intoxication is contributory negligence which bars plaintiff's recovery. We have already noted that, when officers deal with publicly intoxicated individuals, the legislature has immunized them from civil and criminal liability only if the officers use reasonable measures under Section 122C-301(b): such limited immunity would be unnecessary if an individual's intoxication always constituted contributory negligence. To deny a substance abuser any standard of care when he seeks treatment of his substance abuse would vitiate the legislature's detailed regulatory scheme for aiding substance abusers. Under these cir-

cumstances, defendant's contributory negligence argument is meritless.

## II

Although we remand for a new trial, plaintiff has also assigned error to certain other evidentiary rulings. Defendant may be expected to raise again on remand those objections sustained by the trial court. We therefore address these evidentiary issues in the interest of judicial economy.

[4] In eliciting an expert neurologist's opinion concerning the time at which plaintiff suffered irreversible brain damage, plaintiff's counsel directed the doctor to make certain hypothetical assumptions based upon hospital records and the doctor's treatment of plaintiff. The detailed factual assumptions covered plaintiff's specific physical condition and responses during the time plaintiff was unconscious between 12:30 a.m. and 5:00 a.m. Based upon these assumptions, the doctor concluded that plaintiff had not suffered brain damage at 12:30 a.m. The trial court also allowed the doctor's subsequent opinion that plaintiff's brain damage resulted from "his not getting medical attention when he needed it." The doctor then generally testified that such treatment was needed when it was recognized that plaintiff was unconscious and could not be aroused to full alertness and wakefulness.

Plaintiff's counsel then asked the doctor again to assume the above-mentioned facts and asked, "[A]t what point are you saying that [the plaintiff] needed to get the medical attention?" The trial court sustained defendant's objection to both this question and a series of subsequent questions attempting to clarify the doctor's general response. Defendant argues exclusion of this testimony is proper as there was nothing in the record from which the time of plaintiff's deterioration could be determined with precision. Defendant asserts any opinion would therefore be sheer speculation.

We disagree. The factual basis of the doctor's opinion was assumed in part in counsel's previous hypothetical questions. Given these assumed facts and the doctor's expertise and actual treatment of plaintiff, the doctor was not being required to speculate baselessly when asked to narrow the actual time at which plaintiff's brain function had irreversibly deteriorated. *See generally Cherry v. Harrell,* 84 N.C. App. 598, 601-06, 353 S.E. 2d 433, 435-

38, *disc. rev. denied,* 320 N.C. 167, 358 S.E. 2d 49 (1987) (discussing degree of expert certainty required for admissible testimony); *see also Haponski v. Constructor's Inc.,* 87 N.C. App. 95, 100-03, 360 S.E. 2d 109, 111-113 (1987). Under N.C.G.S. Sec. 1A-1, Rule 702 (1983), the neurologist was clearly in a superior position to help the jury determine at what point defendant's alleged negligence occurred. Under N.C.G.S. Sec. 1A-1, Rule 705, defendant is afforded ample opportunity to examine the factual basis of the doctor's opinion.

## III

[5]  We agree with defendant that the trial court properly excluded certain questioning of the Center's acting director concerning the Center's internal investigation of the incident resulting in this lawsuit. *See* N.C.G.S. Sec. 1A-1, Rule 407 (1983). The trial court also properly barred plaintiff's counsel from asking the Center director for his personal opinion whether an unconscious person presented a medical emergency: the director was never qualified as a medical expert and his testimony on this issue would not be admissible under Rule 702.

However, the trial court also precluded plaintiff's counsel from even asking whether, in light of its written policies and procedures, it was Center policy "that a state of unconsciousness was a medical emergency." Defendant objected that the written documents in evidence "spoke for themselves." The transcript reveals the trial court echoed this notion:

THE COURT: . . . The policy speaks for itself and it can come in.

MR. MRAZ: Well, okay. Well, I think he's entitled to say what the policy requires.

THE COURT: Well, I don't.

We conclude the trial court should have allowed the Center director to testify as to his personal knowledge of the Center's interpretation and implementation of its own written policies and procedures. The director was presumably competent to answer such questions. Furthermore, since the written policies do not themselves establish defendant's standard of care under these circumstances, such questions do not call for any ultimate legal conclusions which would otherwise invade the province of the jury.

*Cf.* N.C.G.S. Sec. 1A-1, Rule 704, Advisory Committee Note (1983) (Rules 701, 702 and 403 afford assurance against admitting opinions which merely tell the jury what result to reach and exclude opinions "phrased in terms of inadequately explored legal criteria"). Thus, while plaintiff may not inquire on remand as to those remedial measures taken by the Center after the incident, we fail to see why plaintiff may not inquire as to how the Center actually implemented its written policies and procedures: such evidence would be extremely helpful in determining what duty of care the Center voluntarily assumed which in turn is relevant to the standard of reasonable care at issue.

While we note the trial court also excluded plaintiff's "day-in-the-life" video tape, we express no opinion whether the court's action was an abuse of discretion. *See generally Campbell v. Pitt County Memorial Hosp.,* 84 N.C. App. 314, 319-21, 352 S.E. 2d 902, 905-06, *aff'd,* 321 N.C. 260, 362 S.E. 2d 273 (1987) (in part requiring trial court to "examine carefully into [the tape's] authenticity, relevancy and competency . . .").

For the above and foregoing reasons, the trial court's entry of directed verdict for defendant is reversed and plaintiff's claims against defendant are remanded for a new trial in accordance with this opinion.

Reversed and remanded.

Chief Judge HEDRICK concurs in the result.

Judge MARTIN concurs with the majority that plaintiff is entitled to a new trial for the reasons contained in Part I of this opinion.

Judge MARTIN concurred in this opinion prior to 31 December 1987.