RICHARD M. BOOHER and NANCY ANN BROWN, Plaintiffs v. WILLIAM C. FRUE, RONALD K. PAYNE and MICHAEL Y. SAUNDERS, Defendants

No. 8928SC1116

(Filed 5 June 1990)

1. **Attorneys at Law § 57 (NCI4th) — fee splitting — action for constructive fraud and constructive trust — directed verdict and j.n.o.v. denied**

    The trial court did not err in denying defendant's motions for a directed verdict and judgment n.o.v. in an action for constructive fraud and constructive trust arising from a fee-splitting arrangement with a Texas attorney despite plaintiffs' testimony in which they denied the existence of an attorney-client relationship with defendant. Plaintiffs' testimony was not sufficiently fact specific to be binding but was in response to questions regarding legal conclusions; additionally, defendant himself testified that he felt he was representing plaintiff Booher. There was also no prejudicial error in denying a directed verdict for defendant for any amount of the excess of the money he received because the jury returned a verdict for less than that amount.

    **Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.**

2. **Attorneys at Law § 57 (NCI4th) — fee splitting — action for constructive trust and constructive fraud — instruction on burden of proof**

    The trial court did not err in an action for constructive trust and constructive fraud arising from a fee-splitting arrangement with a Texas attorney by giving a peremptory instruction on whether a relationship of trust and confidence existed between plaintiffs and defendant Frue because the evidence in the case, if believed by the jury, proves the existence of an attorney-client relationship. The instruction given was a proper peremptory instruction and not a directed verdict because the court stated that "if you believe the evidence" the answer to the first issue would be yes. The court had also properly instructed the jury on the burden of proof and the credibility of witnesses.

Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.

3. **Attorneys at Law § 51 (NCI4th) — fee splitting — fraud — issue submitted to jury**

The trial court did not err in an action for constructive fraud and constructive trust arising from a fee-splitting arrangement with a Texas attorney in its submission of an issue relating to fraudulent practice. Although defendant's argument was that there is no way to determine whether the jury awarded damages based on constructive trust, unjust enrichment, or because defendant received an excessive fee, N.C.G.S. § 84-13 provides for double damages when a plaintiff is injured by the fraudulent practice of an attorney and the jury clearly found that defendant committed a fraudulent practice. There was a sufficient definition of fraudulent practice in that the court instructed the jury that constructive fraud would have occurred if they found a fiduciary relationship and the transaction was not open, fair and honest. The legality of contingent fees is irrelevant to this issue.

Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.

4. **Fiduciaries § 1 (NCI3d) — fee-splitting arrangement between attorneys — breach of fiduciary duty — instructions on damages**

The trial court did not err in an action for constructive fraud and constructive trust arising from a fee-splitting agreement between a North Carolina attorney and a Texas attorney by instructing the jury on alternative bases for plaintiffs' recovery of damages or restitution. It is clear that plaintiffs' recovery was based on defendant's breach of fiduciary duty; imposition of a constructive trust is one possible remedy and damages is an alternate remedy. Defendant does not argue that the jury improperly allowed plaintiffs double recovery.

Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.

5. **Estoppel § 4.6 (NCI3d) — fee splitting between attorneys — constructive fraud and constructive trust — estoppel not applicable**

Estoppel was not applicable to a claim for constructive fraud and constructive trust arising from a fee-splitting agree-

ment between attorneys where plaintiffs accepted the proceeds from various claims of their son's estate with full knowledge of the fee-splitting agreement because defendant Frue at the time of the disbursement of funds knew of plaintiffs' dissatisfaction with the referral fee arrangement and did not rely on plaintiffs' actions or change his own position to his prejudice based on their actions.

**Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.**

6. **Attorneys at Law § 57 (NCI4th)— fee splitting—testimony regarding contacts and conversations with other attorneys —admissible**

The trial court did not err in an action for constructive fraud and constructive trust arising from a fee-splitting arrangement between attorneys in admitting testimony regarding contacts and conversations of plaintiffs with other attorneys. The testimony was offered to show plaintiffs' state of mind, not the truth of the matters asserted, and was relevant to show the plaintiffs' understanding of their need to hire Texas legal counsel.

**Am Jur 2d, Attorneys at Law §§ 215, 302, 303, 309; Fraud and Deceit §§ 4, 260, 441.**

7. **Attorneys at Law § 57 (NCI4th); Evidence § 15 (NCI3d)— fee splitting between attorneys—constructive fraud and constructive trust—Rules of Professional Conduct—admissible**

The trial court did not err in an action for constructive fraud and constructive trust arising from a fee-splitting agreement between a North Carolina attorney and a Texas attorney by allowing the introduction into evidence of North Carolina Disciplinary Rules 2-106 and 2-107. Although a violation of a Rule of Professional Conduct does not constitute civil liability per se, the Rules are some evidence of an attorney's duty to his client. Moreover, the North Carolina Rules of Professional Conduct apply rather than Texas law even though the contract to split the fee was entered in Texas because the attorney-client relationship between plaintiffs and a North Carolina lawyer was entered into in North Carolina.

**Am Jur 2d, Attorneys at Law §§ 48, 54, 55.**

BOOHER v. FRUE

[98 N.C. App. 570 (1990)]

8. **Evidence § 46.1 (NCI3d)— fee splitting between attorneys—
Texas attorney's deposition—admissible**

The trial court did not err in an action for constructive
fraud and constructive trust arising from a fee-splitting ar-
rangement with a Texas attorney by allowing plaintiffs' counsel
to read to the jury portions of the Texas attorney's deposition
concerning hypothetical situations in which the Texas attorney
would have taken less than one-third of any recovery. These
questions were asked to rebut defendant's argument that plain-
tiffs were not damaged by the fee-splitting arrangement and,
additionally, there was some evidence presented by defendant
that plaintiff Booher was present when the fee-splitting ar-
rangement was discussed, so that there was some basis in
the evidence for the hypothetical question. N.C.G.S. § 8C-1,
Rule 701.

**Am Jur 2d, Depositions and Discovery §§ 176, 177, 192.**

9. **Evidence § 23 (NCI3d)— fee splitting—constructive fraud and
constructive trust—pleadings—excluded**

There was no prejudicial error in an action for construc-
tive fraud and constructive trust arising from a fee-splitting
arrangement with a Texas attorney where the trial court denied
defendant's request to admit a particular paragraph of plain-
tiffs' complaint and a corresponding answer from the Texas
attorney. Although plaintiff asserted that the pleadings showed
the Texas attorney's bias and that its introduction was to
impeach the credibility of his deposition testimony, defendant
had the opportunity to question the Texas attorney on this
matter in his deposition and apparently failed to take advan-
tage of that opportunity.

**Am Jur 2d, Depositions and Discovery §§ 176, 177, 192.**

10. **Evidence § 20 (NCI3d)— fee splitting—constructive fraud and
constructive trust—rebuttal evidence**

The trial court did not err in an action for constructive
fraud and constructive trust arising from a fee-splitting ar-
rangement by allowing rebuttal evidence from plaintiff about
payments made to the Texas attorney where defendant failed
to assert at trial that the rebuttal evidence was outside the
scope of previously admitted evidence and therefore could not
argue that basis for objection on appeal. Moreover, the evidence

was offered to rebut defendant's evidence that certain fees had been paid out of the North Carolina attorney's portion of their fees rather than to prove the truth of the statements made and was therefore not inadmissible hearsay.

**Am Jur 2d, Evidence § 269.**

11. **Attorneys at Law § 51 (NCI4th)— fee splitting—fraud— statutory damages**

The trial court did not err in an action for constructive fraud and constructive trust arising from a fee-splitting agreement by determining that N.C.G.S. § 84-13 applied to the facts of this case even though this case involved constructive fraud by breach of fiduciary duty. When an attorney breaches the duty owed to his client, there is a presumption of fraud and N.C.G.S. § 84-13 does not limit its availability to cases of actual fraud. Although defendant also asserted that it was impossible to tell whether damages were awarded on the basis of constructive fraud, unjust enrichment, or excessive fee, the jury found that defendant had engaged in a fraudulent practice and that was sufficient to invoke the provisions of the statute.

**Am Jur 2d, Attorneys at Law § 215.**

APPEAL by defendant William C. Frue from judgment entered 2 March 1989 by *Judge Hollis M. Owens, Jr.* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 5 April 1990.

Plaintiffs brought suit against defendants William C. Frue (Frue) and Ronald K. Payne (Payne), licensed North Carolina attorneys, and Michael Y. Saunders (Saunders), a Texas attorney, seeking compensation for claims of constructive fraud and constructive trust. In summary, plaintiffs sued defendants Frue and Payne to recover money paid to them by Saunders under a referral fee arrangement. Saunders was named a defendant pursuant to Rule 19(a) of the North Carolina Rules of Civil Procedure. In an earlier appeal we reversed the trial court's dismissal of plaintiffs' action for failure to state a claim and remanded for trial. *Booher v. Frue*, 86 N.C. App. 390, 358 S.E.2d 127 (1987), *aff'd*, 321 N.C. 590, 364 S.E.2d 141 (1988). The trial court allowed summary judgment for defendant Payne. That judgment is reversed in a companion case, 98 N.C. App. 585 (1990).

BOOHER v. FRUE

[98 N.C. App. 570 (1990)]

Plaintiffs' son was injured in an accident in Texas and later died from his injuries. Plaintiff Booher planned a trip to Texas to secure legal counsel to handle the claims arising from his son's death. Booher testified that his employer suggested that Frue, an Asheville attorney, should accompany Booher to Texas. On the morning Booher and Frue arranged to leave for Texas, Payne was at the airport with Frue. Booher mistakenly assumed that Payne was Frue's partner. Defendants Frue and Payne accompanied Booher and one of his sons to Texas in a plane Booher had borrowed from a friend; Booher is a pilot. Booher, Frue and Payne initially conferred with the Houston firm of Hutcheson & Grundy (H&G) and that firm handled the probate matters for plaintiffs' son's estate. H&G also arranged for the three to meet with Saunders regarding all other claims arising from the son's death. A fee arrangement was agreed upon whereby Saunders was to receive ⅓ of any recovery on the life insurance and wrongful death claims and ¼ of any recovery for the workers' compensation claim. Frue and Payne, unknown to plaintiffs, negotiated a referral fee with Saunders for ⅓ of Saunders' total fees. The fees received by Frue in relation to the workers' compensation and wrongful death claims are the subject of plaintiffs' claims here.

As to plaintiffs' claim that defendants' agreement with Saunders was in breach of their fiduciary duty to plaintiffs, the trial court granted Payne's motion for summary judgment. The trial court submitted the case against Frue to the jury. From judgment on the verdict defendant Frue appeals.

*Kennedy Covington Lobdell & Hickman, by James E. Walker and James P. Cooney, III, for plaintiff-appellees.*

*Morris, Bell and Morris, by William C. Morris, Jr., for defendant-appellant.*

EAGLES, Judge.

We have narrowed defendant's twenty-five assignments of error and eleven arguments to four categories. First, defendant argues that the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict. Second, defendant argues that the trial court made various errors in its instructions to the jury. Third, defendant argues that the trial court made several evidentiary errors. Finally, defendant asserts that the trial court erred in determining that G.S. 84-13 applies to this case. Because

defendant's brief failed to argue four of his assignments of error, they are deemed abandoned. App. R. 28(a). After careful review of the proceedings and defendant's arguments, we find no error.

I. Directed Verdict and
Judgment Notwithstanding the Verdict.

[1] Defendant's first argument is that the trial court erred in denying his directed verdict and judgment notwithstanding the verdict motions. Defendant argues that plaintiffs are bound by their testimony in which they denied the existence of an attorney-client relationship. Defendant also argues that the plaintiffs waived their right to sue since they knew of the fee-splitting arrangement at least one year in advance of the disbursement but accepted their portion of the proceeds. Defendant also argues that the trial court should have directed a verdict in his favor as to any sum in excess of $73,973.16, the amount he received. We disagree and overrule defendant's assignments of error.

The question presented by the defendant's motion for a directed verdict is whether the evidence, when considered in the light most favorable to plaintiffs, is sufficient for submission to the jury. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971). A motion for a directed verdict may properly be granted "only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law." *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979). The standards for granting a motion for judgment notwithstanding the verdict are the same as those for granting a directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 584, 201 S.E.2d 897, 903 (1974).

Defendant initially asserts that the plaintiffs continually and unequivocally testified that they never hired defendant to be their attorney and plaintiffs are bound by their testimony. *See Woods v. Smith*, 297 N.C. 363, 255 S.E.2d 174 (1979); *Cogdill v. Scates*, 290 N.C. 31, 224 S.E.2d 604 (1976). Defendant's reliance on the cited cases is misplaced.

In *Woods* the court stated the general rule that "when a party gives adverse testimony in a deposition or at trial, that testimony should not, in most instances, be conclusively binding on him. . . ." *Woods*, 297 N.C. at 374, 255 S.E.2d at 181. The court stated that there are two exceptions to this general rule: first, when a party gives unequivocal factual testimony, as in *Cogdill*, the

statements should be treated as binding judicial admissions, *id.,* and second, when there is insufficient evidence to support the plaintiff's allegations, summary judgment or a directed verdict "would in most instances be properly granted against him." *Id.* This case presents neither of those exceptions. Here, the plaintiffs' testimony was not sufficiently fact-specific but was in response to questions regarding legal conclusions. Additionally, Frue himself testified that when he left with Booher to travel to Texas, he (Frue) felt he was representing Booher. This evidence was sufficient to withstand defendant's motions.

Defendant also argues that plaintiffs waived their right to sue for fraud when they accepted their portion of the Texas litigation proceeds with knowledge of the fee-splitting arrangement between Saunders and Frue. Defendant's argument is without merit and is discussed more thoroughly in Section II.D. below.

Defendant also argues that the trial court erred in denying a directed verdict in his favor for any amount in excess of the $73,973.16 he received. Assuming *arguendo* that defendant could be liable to plaintiffs for no more than the amount he actually received, defendant was not prejudiced by the trial court's failure to grant his requested directed verdict; the jury returned a verdict of $61,500.

## II. Instructions.

### A. First issue: Attorney-client relationship.

[2] Defendant argues that the trial court erred in failing to give his proposed instruction on the first issue. The proposed instruction placed on plaintiffs the burden of proof on the issue of whether a relationship of trust and confidence existed between plaintiffs and Frue. The trial court gave a peremptory instruction on this issue. Defendant also argues that even if a peremptory instruction had been proper, the one given was improper since it did not allow the jury to determine the credibility of the witnesses. Defendant's arguments are without merit.

When only one inference can be drawn from the evidence, a peremptory instruction may be given in favor of the party with the burden of proof. *Cutts v. Casey,* 278 N.C. 390, 418, 180 S.E.2d 297, 312 (1971); *Chisholm v. Hall,* 255 N.C. 374, 376-77, 121 S.E.2d 726, 728 (1961). A correct peremptory instruction informs the jury that they should answer the issue as specified if they find from

the greater weight of the evidence that the facts are as all the evidence tends to show. The court should also inform the jury that if they do not so find they should answer the issue in the opposite manner. The court must leave to the jury the decision on the issue. The evidence in this case, if believed by the jury, proves the existence of an attorney-client relationship between plaintiffs and Frue. On this record the trial court correctly gave a peremptory instruction on the first issue.

Defendant also argues that the instruction given was incorrect. The trial court instructed the jury that:

[T]he first issue reads as follows: "At the time of the transactions relating to the death of the plaintiffs' son, did a relationship of trust and confidence exist between the plaintiffs and the defendant Frue?" Now, on this issue the burden of proof is on the plaintiffs. Now, when a relationship — when the relationship between two people is such that one is entitled to place special trust and confidence in the other, if there is a transaction between them, even in the absence of intentional fraud or deception, there is a presumption that the transaction was induced by fraud or undue influence on the part of the person in whom the trust and confidence was placed. A client is entitled to place such trust and confidence in his attorney as to any transaction in respect to a matter within the client/attorney relationship.

Now, the plaintiffs in this case have offered evidence which tends to show that the defendant Frue, a member of the North Carolina State Bar Association [sic], accompanied the Plaintiff Booher to Houston, Texas to retain a Texas lawyer for the purpose of bringing claims or lawsuits for damages arising from the death of the plaintiffs' son. Now, the defendant Frue has offered evidence that he was retained to represent the plaintiff Booher in connection with the transaction, and that the matter was in his hands. Now, in connection with the first issue, members of the jury, since all the evidence tends to show a relationship of trust and confidence, the Court instructs you that if you believe the evidence, your answer to Issue No. 1 should be "yes."

Now, the second issue reads as follows — and by the way, members of the jury, if you answer Issue No. 1 "yes," you

should then proceed to answer the second issue. If you answer Issue No. 1 "no," you would return to the courtroom.

Defendant argues that the trial court's instruction was not a proper peremptory instruction but was a directed verdict. We disagree. The trial court stated in his instruction that "if you believe the evidence" the answer to the first issue would be "yes." Additionally, the court had properly instructed the jury on the burden of proof and credibility of witnesses.

B. Second issue: Fraudulent practice.

[3] Defendant argues that the trial court erred in submitting the second issue relating to fraudulent practice to the jury. Defendant argues that both the wording on the issue sheet and the instructions given were improper. We disagree with defendant's arguments and overrule his assignments of error.

The second issue submitted to the jury was as follows: "Did defendant, Frue, commit a fraudulent practice by a breach of that relationship of trust and confidence?" Defendant asserts that the wording of the second issue was "an obvious attempt to place Plaintiffs in a position to use the provisions of NCGS 84-13. . . ." However, defendant makes no argument regarding any impropriety in plaintiffs attempting to take advantage of this statutory provision. Instead, defendant's argument is that there is no way to determine whether the jury awarded damages based on constructive trust, unjust enrichment or because defendant received an excessive fee for the work performed. Defendant's argument is misplaced. The statute provides for double damages when a plaintiff is injured by a fraudulent practice of an attorney. The jury clearly found that defendant committed a fraudulent practice.

Defendant's second argument relating to the second issue is that there was no instruction defining a "fraudulent practice" and the court erred in failing to instruct the jury that contingent fee arrangements are legal. The trial court instructed the jury that if they found: (1) a fiduciary relationship; and (2) the transaction was not open, fair and honest, then constructive fraud would have occurred. This was a sufficient definition of a "fraudulent practice." Additionally, the legality of contingent fees is irrelevant to the second issue. Plaintiffs' cause of action was not based on the illegality of contingent fees but the plaintiffs' lack of knowledge of and consent to Frue's agreement with Saunders.

C. Third issue: Theories of recovery.

[4] Defendant asserts that the instructions given on the third issue improperly submitted alternative bases for plaintiffs' recovery: "damages recovery" (compensation for plaintiffs' loss) or "restitution recovery" (unjust enrichment). We find no error in the court's instruction. It is clear that plaintiffs' recovery was based on defendant's breach of fiduciary duty. Imposition of a constructive trust (i.e., recovery in restitution or for unjust enrichment) is one possible remedy available to plaintiffs for defendant's breach of fiduciary duty. Damages is an alternative remedy. *See Speight v. Branch Banking and Trust Co.*, 209 N.C. 563, 566, 183 S.E. 734, 736 (1936). Defendant does not argue that the jury improperly allowed plaintiffs a double recovery, one for "damages" and one for "restitution."

D. Estoppel.

[5] Defendant's final argument regarding the trial court's instructions involves the issue of estoppel. Defendant asserts that there was evidence from which the jury could find that plaintiffs waived their right to sue. Specifically, defendant asserts that plaintiffs' acceptance of the proceeds from the various claims of their son's estate, with full knowledge of the fee-splitting agreement between the attorneys, raises an issue of estoppel. The principles of estoppel do not apply here.

> As related to the party claiming the [equitable] estoppel, the essential elements are (i) lack of knowledge and the means of knowledge of the truth of the facts in question; (ii) reliance upon the conduct of the party to be estopped; and (iii) action based on this conduct which changes his position prejudicially.

*Five Oaks Homeowners Assoc., Inc. v. Efirds Pest Control Co.*, 75 N.C. App. 635, 636, 331 S.E.2d 296, 297-98 (1985). "Equity does not estop one from asserting his legal rights to enable another to make a profit which he could not otherwise obtain." *Herring v. Volume Merchandise, Inc.*, 252 N.C. 450, 453, 113 S.E.2d 814, 816 (1960). At the time of disbursement of funds, defendant Frue knew of plaintiffs' dissatisfaction with the referral fee arrangement. Frue did not rely on plaintiffs' actions and did not change his own position to his prejudice based on their actions. Accordingly, defendant's assignment of error is overruled.

III. Admission of Evidence.

A. Contacts with other attorneys.

[6] Defendant argues that testimony regarding contacts and conversations of plaintiffs with other attorneys was irrelevant and served only to prejudice defendant, creating the impression that defendant was "ambulance chasing." Defendant also argues that the statements were inadmissible hearsay. This testimony was offered to show plaintiffs' state of mind, not the truth of the matters asserted and is therefore not hearsay. Additionally, the testimony was relevant to show the plaintiffs' understanding of their need to hire Texas legal counsel. Defendant's argument is without merit.

B. Disciplinary Rules 2-106 and 2-107.

[7] Defendant asserts that the introduction into evidence of North Carolina Disciplinary Rules 2-106 and 2-107 was error. Defendant argues that the Rules were irrelevant to this proceeding since the Rules do not define the standards for civil liability. Although we agree with defendant's argument that a violation of a Rule of Professional Conduct does not constitute civil liability *per se*, we disagree that the substance of those Rules was irrelevant here. The Rules are some evidence of an attorney's duty to his client. *See Klassette v. Mecklenburg County Area Mental Health, Mental Retardation and Substance Abuse Authority*, 88 N.C. App. 495, 364 S.E.2d 179 (1988) (voluntary policies and procedures adopted by health care facility are some evidence of standard of care); *Slade v. New Hanover County Bd. of Educ.*, 10 N.C. App. 287, 178 S.E.2d 316, *cert. denied*, 278 N.C. 104, 179 S.E.2d 453 (1971) (voluntarily adopted safety standards to protect the public are some evidence that a reasonably prudent person would adhere to their requirements).

Defendant also asserts that Texas law governs here since the contract to split the fee was entered in Texas, not North Carolina. In Texas, subject to certain restrictions and contrary to the North Carolina Rules, referral fee agreements between attorneys are not unethical. Defendant's argument is without merit. It is uncontradicted that the attorney-client relationship between plaintiffs and Frue, a North Carolina lawyer, was entered into in North Carolina. Accordingly, the North Carolina Rules of Professional Conduct apply.

C. Hypothetical questions.

[8] Defendant argues that the trial court erred by allowing plaintiffs' counsel to read to the jury portions of Saunders' deposition. The portions of the transcript on which defendant bases this argument read as follows:

Q "Well, had the subject [the referral fee] been brought up in Mr. Booher's presence, you said you would have been willing to discuss it, right?

A Right.

Q Had it been brought up" —

\* \* \*

Q "Had it been brought up in his presence and had he objected to Mr. Frue and Payne receiving one-third of your fee, but instead, suggested that since you were willing to do it for two-thirds of the fee, would you do it for that amount and let him get satisfied with Mr. Frue and Mr. Payne?"

\* \* \*

A "I would have looked over at the lawyers and asked them if they were going to be able to work that out with Mr. Boo (sic) that way — Booher that way so that they got paid satisfactorily, and I would have considered doing that since I would be giving up the same third as I otherwise would. So long as the lawyers that brought me the case were satisfied they were being paid what they should be paid, I would have discussed that."

\* \* \*

Q "Of course, Mr. Frue didn't ask you to do that, did he?

A No.

Q Mr. Payne didn't ask you to do that, did he?

A No."

\* \* \*

Q "And when you're talking about being — your stock answer being 'no' to the question of whether you would reduce the contingent fee basis, of course, in that 'no' answer you already

realize that you're only getting two-thirds of a-third at that time, since there is a referring attorney there; isn't that correct?"

A "Yes. When I was talking about one-third, the one-third I say is my stock contract, and my stock answer presumes that there may come out of that a referral fee in my normal dealings . . . in the community. Some cases I don't pay a referral fee because I get them direct from the client, but that, obviously, my one-third, if there's a referral involved, there's money coming out of that one-third.

\* \* \*

Q But had there been no referral fee in this situation, you certainly may have considered very favorably taking it for less than a-third, since you didn't have to pay a referral fee; isn't that true?"

\* \* \*

A "Well, under the circumstances you've previously described where they're all sitting there and the lawyers actually know or are satisfied that they're being taken care of with whatever arrangement they make with the client, separate and apart from me, if they're satisfied with that, then I would not be losing anything by taking it for the same two-thirds of one-third that I was already willing to contract for."

At trial, defendant asserted that the questions asked were too hypothetical and speculative to be admissible. Here, defendant asserts that the answers are inadmissible lay opinion under G.S. 8C-1, Rule 701. Defendant argues that Rule 701 "is generally stated to stand for the proposition that a lay witness may not testify in answer to hypothetical questions, especially those based on circumstances which are not in evidence." These questions were asked to rebut defendant's argument that plaintiffs were not damaged by the fee-splitting arrangement since Saunders' "stock contract" was to receive one-third. Additionally, there was some evidence presented by defendant that Booher was present when the fee-splitting arrangement was discussed. Therefore, there is some basis in the evidence for the hypothetical question. We find no merit in defendant's argument and overrule this assignment of error.

D. Pleadings.

[9] Defendant also argues that the trial court erred in denying his request to admit a particular paragraph of plaintiffs' complaint and a corresponding answer of Saunders. Defendant asserts that the pleadings in question show Saunders' bias and its introduction was to impeach the credibility of his deposition testimony. In Saunders' answer he asserts he is entitled to the amounts paid to Payne and Frue if plaintiffs prevail in their action. Assuming *arguendo* that the trial court erred in sustaining plaintiffs' objection, defendant has failed to show how he was prejudiced by the court's ruling. Defendant had the opportunity to question Saunders on this matter in his deposition and apparently failed to take advantage of that opportunity. On this record we see no prejudice to defendants from the trial court's refusal to admit a portion of the complaint and Saunders' answer.

E. Rebuttal.

[10] Defendant's final argument regarding the introduction of evidence is that the trial court erred in allowing rebuttal evidence from plaintiff Brown about payments made to Saunders. Defendant asserts that the rebuttal testimony was outside the scope of previously admitted evidence. Defendant failed to assert this basis when objecting at trial and therefore cannot argue that basis on appeal. Additionally, defendant argues that the testimony was hearsay. Defendant's argument is without merit. The evidence was offered to rebut defendant's evidence that certain fees had been paid by Frue and Payne out of their portion of the fees, not to prove the truth of the statements made to Mrs. Brown. Therefore, the evidence was not inadmissible hearsay.

IV. Applicability of G.S. 84-13.

[11] Defendant's final argument is that the trial court erred in determining that G.S. 84-13 is applicable to the facts of this case. Defendant asserts that G.S. 84-13 is in derogation of the common law and, since it is a statute that imposes penalties, it must be strictly construed. Therefore, defendant argues that the statute applies only to cases of actual fraud, not constructive fraud by breach of a fiduciary duty. Defendant's argument is without merit. When an attorney breaches the duty owed to his client, there is a presumption of fraud. The statute does not limit its applicability to cases of actual fraud. We note that G.S. 84-13 has been held

BOOHER v. FRUE

[98 N.C. App. 585 (1990)]

to apply in a case of constructive fraud in a bankruptcy proceeding. *See Ehlenbeck v. Patton (In re Patton)*, 58 Bankr. 149, 150 (W.D. N.C. 1986) (where attorney allegedly embezzled a client's funds and thereafter filed a petition in bankruptcy, court determined that "when an attorney mishandles client funds, there is a presumption of fraud as a matter of law. N.C.G.S. § 84-13 applies.").

Defendant also asserts that it is impossible to tell whether damages were awarded on the basis of constructive fraud, unjust enrichment or that the fee received was excessive. The jury found that Frue had engaged in a fraudulent practice. This is sufficient to invoke the provisions of G.S. 84-13.

For the reasons stated, we find no error in the trial court.

No error.

Judges WELLS and GREENE concur.