LIVINGSTON v. ADAMS KLEEMEIER HAGAN HANNAH & FOUTS

[163 N.C. App. 397 (2004)]

———————————

VIRGINIA L. LIVINGSTON, Individually and as Administratrix C.T.A. of the Estate of Virginia H. Lindley, Plaintiff-Appellant v. ADAMS KLEEMEIER HAGAN HANNAH & FOUTS, P.L.L.C., a North Carolina professional limited liability company, formerly Adams Kleemeier Hagan Hannah & Fouts, L.L.P., a North Carolina limited liability partnership, formerly Adams Kleemeier Hagan Hannah & Fouts, a North Carolina general partnership, WALTER L. HANNAH, individually and as Co-Executor of the Estate of John Van Lindley, DANIEL W. FOUTS, ROBERT G. BAYNES, M. JAY DEVANEY, MICHAEL H. GODWIN, W. WINBURNE KING III, F. COOPER BRANTLEY, CHARLES T. HAGAN III, LARRY I. MOORE III, W.B. RODMAN DAVIS, MARGARET SHEA BURNHAM, PETER G. PAPPAS, WILLIAM M. WILCOX IV, DAVID A. SENTER, J. ALEXANDER BARRETT, CHRISTINE L. MYATT and LOUISE A. MAULTSBY, Defendants-Appellees

No. COA03-22

(Filed 6 April 2004)

**1. Attorneys— deed of trust—loan—additional collateral**
     The trial court did not err by granting partial summary judgment in favor of defendant attorneys as to plaintiff's claim against defendants for failing to obtain a bank's agreement to accept a deed of trust on two tracts of land as additional collateral for a $750,000 loan, because: (1) defendants did not conceal these properties from the bank; and (2) testimony of bank employees established that the bank was aware of the pertinent properties and simply made a business decision not to accept the properties as collateral.

LIVINGSTON v. ADAMS KLEEMEIER HAGAN HANNAH & FOUTS

[163 N.C. App. 397 (2004)]

### 2. Attorneys— professional negligence—ratification of release

The trial court did not err by granting partial summary judgment in favor of defendants as to plaintiff's claim against defendants for professional negligence for failing to institute an inverse condemnation action against DOT, because plaintiff released defendants from such a claim when there was evidence that both decedent and her estate ratified a release contained in the Inter-Creditor Agreement, that limited defendants' liability, by accepting the benefits provided for in said release.

### 3. Corporations— shareholder action—standing—special duty

The trial court did not err by concluding that plaintiff lacked standing to bring an action against defendants as a shareholder for injuries to her corporation, because: (1) the general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock; and (2) no facts have been alleged which lead to the inference of a special duty being owed to plaintiff that is separate and distinct from that owed to the other entities.

### 4. Attorneys— malpractice—applicable standard of care

The trial court did not err by concluding that defendant attorneys and their law firm did not breach the applicable standard of care by failing to file an inverse condemnation action when DOT was only in the preliminary stages of planning a road which might have involved the taking of a client's property, because plaintiff failed to present any affidavits to sufficiently forecast evidence that would show defendants breached the applicable standard of care.

### 5. Statutes of Limitation and Repose— professional malpractice—disability—incompetency

The trial court did not err by concluding that plaintiff's professional malpractice claim against defendant attorneys was barred by statutes of repose and limitation even though plaintiff contends the statutes were tolled based on the disability of incompetency, because: (1) a statute of repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue; and (2) there is no express statutory authority to toll the statute of repose which is a bar to plaintiff's claim.

Appeal by plaintiff from order entered 30 August 2002 by Judge Forrest D. Bridges and appeal by defendants Walter L. Hannah, Daniel W. Fouts, Robert G. Baynes, M. Jay Devaney, W. Winburne King III, F. Cooper Brantley, Charles T. Hagan III, Larry I. Moore III, W.B. Rodman Davis, Margaret Shea Burnham, Peter G. Pappas, William M. Wilcox IV, David A. Senter, J. Alexander Barrett and Christine L. Myatt, from order entered 6 March 2002 by Judge L. Todd Burke in Superior Court, Guilford County. Heard in the Court of Appeals 16 October 2003.

*Jerry R. Everhardt for plaintiff-appellant.*

*Barron & Berry, L.L.P., by Vance Barron, Jr. and Jamie Lisa Forbes, for defendants-appellees.*

McGEE, Judge.

Virginia L. Livingston (plaintiff), individually and as Administratrix C.T.A. of the estate of Virginia H. Lindley, filed suit against Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C. (defendant firm) and individual lawyers within the firm (collectively defendants) on 28 February 2001. Defendants Adams Kleemeier Hagan Hannah and Fouts, P.L.L.C., Michael Godwin, and Louise Maultsby filed an answer and counterclaims on 11 February 2002. Plaintiff filed a response to these counterclaims on 12 March 2002. Subsequently, the remaining individual defendants filed an answer on 21 March 2002. Defendants filed a motion for summary judgment on all claims in the complaint on 5 July 2002. An order granting partial summary judgment in favor of defendants was entered on 30 August 2002. Plaintiff filed a notice of voluntary dismissal without prejudice of all remaining claims on 27 September 2002. Defendants likewise filed a notice of voluntary dismissal of counterclaims without prejudice on 27 September 2002. Plaintiff appeals the order granting partial summary judgment. We also note that the individual defendants filed notice of appeal but failed to perfect their appeal.

Plaintiff is the daughter of the late John Van Lindley (Jack Lindley) and the late Virginia H. Lindley (Virginia Lindley). Jack Lindley established several closely held corporations during his lifetime, including Lindley Nurseries, Inc. (LNI) and Tri-City Terminals, Inc. (TCT). Jack Lindley was in the business of buying and selling real estate. Most of the real estate was owned by Jack Lindley, LNI and TCT. In order to finance the real estate business, Jack Lindley, LNI and TCT borrowed significant sums of money. In particular, Southern

National Bank (Southern National) loaned LNI $750,000, which Jack Lindley and Virginia Lindley personally guaranteed.

At the time of Jack Lindley's death on 20 October 1990, he, LNI and TCT owned only two unencumbered pieces of real property. These two tracts of undeveloped land were located in Rockingham County along the Mayo River. The lower tract consisted of approximately 350 acres and the upper tract comprised approximately 119 acres. Upon Jack Lindley's death, Southern National became concerned about repayment of the $750,000 loan and requested the estate of Jack Lindley, Virginia Lindley, and LNI to provide additional collateral to secure the loan. In March 1991, an attorney with defendant firm sent a letter to Southern National with financial statements of LNI and TCT and a draft of estate tax return schedules for Jack Lindley's estate. Schedule A indicated that Jack Lindley's estate owned the two unencumbered tracts along the Mayo River. Kemp Mattocks (Mattocks) and Richard Tucker (Tucker), officers at Southern National, reviewed Schedule A and were aware that the Mayo River tracts were available as collateral, but they rejected the property as additional collateral.

Toward the end of 1991, Southern National requested a confession of judgment from Virginia Lindley to satisfy her guaranty of the $750,000 loan. She refused but offered another parcel of real estate and her shares of common stock in First Polk Bankshares as collateral. On 20 April 1992, Southern National, Jack Lindley's estate, Virginia Lindley, LNI and TCT entered into a forbearance agreement whereby Southern National promised to forbear foreclosing on the real property of LNI and to forbear bringing suit on Virginia Lindley's guaranty in exchange for 8,000 shares of her stock in First Polk Bankshares and a first deed of trust on a contaminated piece of property. The shares were to be released if the property appraised at a sufficient amount to cover the guaranty. However, the property never appraised at an adequate amount, so the shares were sold and the proceeds were paid to Southern National.

After Southern National refused the two Mayo tracts as additional collateral, defendant Walter Hannah (Hannah) and Jack Lindley's estate entered into a Naked Trust Agreement on 10 June 1992 in which Hannah agreed to hold title to the upper Mayo tract for the estate. Subsequently, Hannah and Jack Lindley's son, John Lindley, as co-executors of the estate, directed Hannah, as trustee, to place a lien on the upper Mayo tract to defendant firm to secure payment of legal

fees. In addition, at about the same time, a security interest in the lower Mayo tract was granted to defendant firm to secure fees.

In early 1992, the North Carolina Department of Transportation (DOT) announced proposed alternative locations for a new beltway around Greensboro. One of the proposed routes impacted a tract owned by LNI and a tract owned by TCT. The LNI tract was encumbered by a $750,000 deed of trust to Southern National. The TCT tract was encumbered by a first deed of trust in the amount of $1,800,000 and also by a second deed of trust. Hannah contacted DOT and requested that DOT identify the property to be taken and requested that DOT enter a settlement based on a hardship acquisition. Hannah wrote to DOT on 9 October 1992 informing DOT that the properties referred to in his earlier letter could not be sold. In the letter, Hannah stated "[t]his situation creates an inverse condemnation and the only way we can properly represent our clients is to initiate an action in the courts for the taking." Several attorneys at defendant firm researched the issue but no inverse condemnation action was ever filed. Eventually, Hannah was able to reach an agreement with DOT regarding the LNI property. However, in the fall of 1993, Jefferson-Pilot commenced foreclosure proceedings on the TCT tract.

An Inter-Creditor Agreement was executed by LNI, TCT, Jack Lindley's estate, and Virginia Lindley as debtors and defendant firm and others as creditors on 31 December 1994. Paragraph Five of the agreement provided the following:

> 5. Release of Claims by Tri-City, Lindley Nurseries, Mrs. Lindley, and the Estate.
>
> Tri-City, Lindley Nurseries, Mrs. Lindley, and the Estate hereby waive, release, discharge and acquit all of the Creditors and their successors, assigns, officers, directors, partners, members, employees and agents from any and all actions, causes of action, claims, and defenses, whether known or unknown, which they now have or may have had prior to the date of this Agreement, on account of or arising out of Creditors' Claims and any other dealings between the Obligors and the Creditors.

This Inter-Creditor agreement also established the Lindley Property Trust Agreement and the Lindley Property Trust (the trust). The purpose of the trust was to permit an orderly sale of the real property which secured obligations to the creditors. The Lindley Property Trust Agreement provided that Virginia Lindley would receive a por-

tion of the net proceeds from the trust. In fact, after her death in February 1997, her estate received $101,717.45 in distribution of proceeds from the trust.

**[1]** Plaintiff's first assignment of error asserts that the trial court erred in granting partial summary judgment to defendants as to plaintiff's claim against defendants for failing to obtain the agreement of Southern National to accept a deed of trust on the upper Mayo tract or a security agreement on the interest of Jack Lindley's estate in the lower Mayo tract as additional collateral for the $750,000 loan to LNI.

> It is well established that the standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law."

*Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, 534 U.S. 950, 151 L. Ed. 2d 261 (2001)). " 'An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action.' " *Thompson v. First Citizens Bank & Tr. Co.*, 151 N.C. App. 704, 706, 567 S.E.2d 184, 187 (2002) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)). " '[A]n issue is genuine if it is supported by substantial evidence, which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion.' " *Fox v. Green*, 161 N.C. App. 460, 464, 588 S.E.2d 899, 903 (2003) (quoting *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citations omitted)). " '[T]he party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the nonmovant.' " *Blair Concrete Servs. v. Van-Allen Steel Co.*, 152 N.C. App. 215, 217, 566 S.E.2d 766, 767 (2002) (quoting *Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 358, 558 S.E.2d 504, 506, *disc. review denied*, 356 N.C. 159, 568 S.E.2d 186 (2002) (citations omitted)).

In light of this standard, we hold the trial court did not err in granting partial summary judgment to defendants on plaintiff's claim

against defendants for failure to obtain Southern National's agreement to accept the Mayo tracts as additional collateral. Plaintiff generally alleges in the complaint that defendants failed to obtain Southern National's agreement in an effort to maintain the unencumbered status of the tracts in order to preserve the availability of those assets for securing legal fees owed to defendants. However, both Mattocks and Tucker, the officers at Southern National who were involved with this particular loan, testified they knew the Mayo tracts were available as collateral but decided to reject these properties. Mattocks testified that he and Tucker "concluded that these properties had no potential for immediate sale" because of their location. Since Southern National only wanted property with "immediate marketability," the Mayo tracts were not suitable. Similarly, Tucker testified about discussions he had with Mattocks about these properties. Tucker knew the properties were available but decided not to take them because they "would have been difficult to sell" and they were concerned about "environmental issues."

In opposition to the motion for summary judgment, plaintiff referenced a 30 January 1992 letter written by Rodman Davis, an attorney with defendant firm, to Southern National's attorney, as support that there was a genuine issue of material fact. Plaintiff notes that the letter provided information about possible collateral that defendants had offered to Southern National, but the Mayo properties were not mentioned as having been offered. Plaintiff contends this letter is sufficient to establish an issue of material fact regarding the efforts put forth by defendants in attempting to obtain the agreement of Southern National. Despite the fact that the Mayo properties were not mentioned in the 30 January 1992 letter, the testimony of Mattocks and Kemp clearly established that Southern National was aware of the Mayo properties and simply made a business decision not to accept the properties as collateral. Defendants did not conceal these properties from Southern National. Rather, they offered the Mayo tracts and Southern National decided against accepting them as collateral. Thus, the trial court did not err in granting summary judgment on this issue. Plaintiff's first assignment of error is overruled.

[2] Plaintiff's remaining assignments of error (numbers two, three, four, five, and six) assert various reasons why the trial court erred in granting partial summary judgment to defendants on plaintiff's claim against defendants for professional negligence for failing to institute an inverse condemnation action against DOT. Plaintiff first argues that the undisputed facts show that plaintiff neither released defend-

ants from such a claim, nor ratified the release of defendants. Plaintiff asserts that the release in the Inter-Creditor Agreement is a violation of Rule 5.8 of the *N.C. Rules of Professional Conduct* that were in effect in 1994 and is thus void as a matter of public policy. Rule 5.8 provided that "[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice." *N.C. Rules of Professional Conduct*, Rule 5.8 (1985). Although the release in the Inter-Creditor Agreement did limit defendants' liability, "a violation of a Rule of Professional Conduct does not constitute civil liability *per se*." *Booher v. Frue*, 98 N.C. App. 570, 581, 394 S.E.2d 816, 821, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 674 (1990). The release is therefore not invalid. However, it is immaterial whether this release is valid on its face because of the reasons stated below that plaintiff ratified the release through her actions.

> A release, originally invalid or voidable, for any reason may be ratified and affirmed by the subsequent acts of the persons interested. Thus if one, who has been induced by fraud and misrepresentation to execute a release and subsequently learns the true import thereof, knowingly takes the benefits of it he thereby ratifies and gives it force and effect. If the plaintiff knew the facts and circumstances of the execution of the release and knew its provisions, and then accepted its benefits he is thereby estopped to deny its validity. With full knowledge of its contents, he cannot accept the benefits and deny the liabilities of the instrument—he cannot ratify it in part and reject it in part.

*Presnell v. Liner*, 218 N.C. 152, 154, 10 S.E.2d 639, 640 (1940). It is undisputed that Virginia Lindley's estate never attempted to repudiate the Inter-Creditor Agreement after Virginia Lindley's death. In fact, plaintiff testified she thought having Hannah execute the agreement on Virginia Lindley's behalf "was the right thing for him to do at that time." Further, there is evidence that both Virginia Lindley and her estate in fact ratified the release contained in the agreement by accepting the benefits provided for in said release. For example, Virginia Lindley was absolved of her guaranty obligation on the loan from Southern National to LNI in exchange for the release. Further, Virginia Lindley's estate received a $50,000 distribution on 12 December 1997 and a $25,000 distribution on 31 December 1998 from the trust. Also, pursuant to the 11 December 2000 Memorandum of Mediated Settlement Agreement, Virginia Lindley's estate received a $26,717.45 distribution. Thus, there is no question that the benefits of the release were readily accepted by Virginia Lindley

and by her estate. Accordingly, assignments of error numbers two and three are overruled.

[3] Plaintiff next argues that the undisputed facts show that plaintiff had standing to assert such a claim. "The well-established general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997). However,

> "[t]here are two major, often overlapping, exceptions to the general rule that a shareholder cannot sue for injuries to his corporation: (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders."

*Barger*, 346 N.C. at 658, 488 S.E.2d at 219 (quoting 12B *Fletcher Cyclopedia of the Law of Private Corporations* § 5911, at 484 (perm. ed. 1993)). Plaintiff argues that her relationship with defendants fits within the first exception. "To proceed with their lawsuit under the first exception to the general rule, plaintiffs must allege facts from which it may be inferred that defendants owed plaintiffs a special duty." *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. In this case, defendants admitted they owed a duty both to Virginia Lindley and to plaintiff to exercise their best professional judgment to preserve the value of Jack Lindley's estate. However, this duty does not rise to the level contemplated under the *Barger* exception.

For further support of this argument, plaintiff alleged that defendants owed a fiduciary duty to her and to LNI, TCT, and the estate of Jack Lindley. "The existence of a special duty [] would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation." *Id.* Plaintiff correctly contends that defendants did admit that they owed fiduciary duties to plaintiff and the other named entities. Although a fiduciary duty may qualify as a special duty sufficient to fit within the *Barger* exception, plaintiff's claim fails because she was not owed a duty separate and distinct from the duty owed to the other entities. In fact, a fiduciary duty was owed to all individuals and entities involved, including plaintiff, Jack Lindley's estate, and both corporations. Since no facts have been alleged which lead to the inference of a special

duty being owed to plaintiff that is separate and distinct from that owed to the other entities, plaintiff lacks standing. Accordingly, assignment of error number four is overruled. In addition, we note that even if plaintiff had standing to sue under the *Barger* exception, her capacity to sue is not relevant based on our determination below concerning plaintiff's claim alleging defendants' breach of the standard of care.

[4] Plaintiff next argues the undisputed facts show that defendants breached the applicable standard of care and that as a result plaintiff suffered damage. An attorney's legal obligation to a client has been described in the following manner:

> "An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers."

*Rorrer v. Cooke*, 313 N.C. 338, 341, 329 S.E.2d 355, 358 (1985) (quoting *Hodges v. Carter*, 239 N.C. 517, 520, 80 S.E.2d 144, 146 (1954)). In this case, defendants supported their motion for summary judgment with the affidavit of John B. McMillan (McMillan), a North Carolina attorney with more than twenty years of experience in eminent domain cases. McMillan testified that defendants did not violate the standard of care by failing to file an inverse condemnation action when DOT was only in the preliminary stages of planning a road which might or might not have involved the taking of a client's property. McMillan further testified that he believed defendants "exercised good judgment consistent with the standard of practice for attorneys practicing in the same, or a similar, locality."

Plaintiff failed to present an affidavit in opposition to the motion for summary judgment which would establish that defendants breached the applicable standard of care. Rather, plaintiff relied solely on a single sentence in a letter written by Hannah to DOT on 9 October 1992. The sentence was as follows: "This situation creates an inverse condemnation and the only way we can properly represent our clients is to initiate an action in the courts for the taking." Rather than establishing a standard of care, this sentence was merely used by Hannah to exert pressure on DOT to settle a potential claim.

> "In a negligence action, summary judgment for defendant is proper where the evidence fails to establish negligence on the

part of defendant, establishes contributory negligence on the part of plaintiff, or establishes that the alleged negligent conduct was not the proximate cause of the injury."

*Rorrer*, 313 N.C. at 355, 329 S.E.2d at 366 (quoting *Williams v. Power & Light Co.*, 36 N.C. App. 146, 147, 243 S.E.2d 143, 144 (1978), *rev'd on factual grounds*, 296 N.C. 400, 250 S.E.2d 255 (1979)). In our case, plaintiff failed to present any affidavits to sufficiently forecast evidence that would show that defendants breached the applicable standard of care. Accordingly, assignment of error number five is overruled.

**[5]** Plaintiff's final argument is that the undisputed facts show that plaintiff's claim was not barred by statutes of repose and limitation. N.C. Gen. Stat. § 1-15(c) provides in part the following:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action . . . . Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . .

N.C. Gen. Stat. § 1-15(c) (2003). Plaintiff argues this statute must be construed with N.C. Gen. Stat. § 1-17, which provides for a tolling of the statute of limitations if a plaintiff is under a specified disability. Plaintiff contends that this tolling provision is also applicable to the four year statute of repose. However, a statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985).

The cases relied upon by plaintiff are distinguishable because they involve specific circumstances not applicable to plaintiff's case. *Osborne v. Annie Penn Memorial Hospital*, 95 N.C. App. 96, 381 S.E.2d 794, *disc. review denied*, 325 N.C. 547, 385 S.E.2d 500 (1989) involved the tolling of a malpractice action of a minor. The case before us involves the disability of incompetency rather than minority. *Osborne* was based on N.C. Gen. Stat. § 1-17(b) rather than the general tolling provision under subsection (a), which is at issue in this case. Secondly, *Bryant v. Adams*, 116 N.C. App. 448, 448 S.E.2d

832 (1994), *disc. review denied*, 339 N.C. 736, 454 S.E.2d 647 (1995) allowed the tolling of a statute of repose because of an express provision in the Products Liability Act which incorporated the tolling provisions of N.C. Gen. Stat. § 1-17. However, the Products Liability Act is not involved in the case before us and *Bryant* is therefore not controlling. In this case, there is no express statutory authority to toll the statute of repose, which is a bar to plaintiff's claim. Accordingly, plaintiff's assignment of error number six is overruled.

Affirmed.

Judges HUDSON and CALABRIA concur.